STATE of Wisconsin, Plaintiff-Respondent,

v.

STEENBERG HOMES, INC., Defendant-Appellant.†

Court of Appeals

*No. 98–0104–CR. Submitted on briefs September 4, 1998.—Decided December 3, 1998.*

(Also reported in 589 N.W.2d 668.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James C. Reiher* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Dykman, P.J., Eich and Roggensack, JJ.

ROGGENSACK, J. Steenberg Homes, Inc. (Steenberg) appeals from a conviction of two counts of

homicide by negligent operation of a vehicle pursuant to § 940.10, STATS., and one count of causing great bodily harm by negligent operation of a vehicle pursuant to § 346.62(4), STATS., all arising out of an accident in which three bicyclists were struck by one of Steenberg's trailers after it detached from one of Steenberg's tractors as it was being driven by a Steenberg employee. Steenberg contends that it cannot be charged, as a matter of law, with negligent vehicular homicide under § 940.10, or causing great bodily harm by the negligent operation of a vehicle under § 346.62(4); that the evidence was insufficient to convict; that the charges in the information were not supported by probable cause; and that the prosecutor abused his charging discretion by charging Steenberg rather than Steenberg's employee with vehicular homicide. Because we conclude that: (1) §§ 940.10 and 346.62(4) may be applied to a corporation; (2) Steenberg's employees acted within the scope of their employment when they negligently operated or handled the tractor-trailer unit; (3) Steenberg did not establish and enforce a procedure to ensure that state and federal regulations applicable to the use of safety chains were followed; and (4) the evidence was sufficient for the circuit court to convict Steenberg of violating .§§ 940.10 and 346.62(4), we affirm the judgment.

## BACKGROUND

On August 8, 1995, Daniel Oliver, a Steenberg employee, was driving a Steenberg tractor-trailer when the trailer disengaged from the tractor and struck three bicyclists who were riding on the shoulder of the road. Two of the bicyclists were killed, and the third was seriously injured.

Oliver began his employment as a truck driver with Steenberg on July 31, 1995. During the week of July 31, 1995, Paul Cwikla, a Steenberg employee, trained Oliver. Cwikla showed Oliver the trailer hookup procedures. Under Cwikla's supervision, Oliver hooked and unhooked the coupling devices and safety chains, and he drove a tractor hauling a mobile home. He also drove with another driver and was involved with at least four other trailer hookups during his training period. Oliver understood that he was responsible for his tractor-trailer's equipment, safety, and operation. After Oliver completed his training, Cwikla gave a positive evaluation approving Oliver to drive on his own. On August 7, 1995, Oliver drove a tractor hauling a mobile home. He hooked and unhooked the coupling devices and safety chains between the tractor and trailer without any problems.

On August 8, 1995, the day of the accident, Oliver, Cwikla, and another employee loaded timbers onto the trailer. Oliver backed up his tractor to the loaded trailer, and Cwikla attached the coupler to the ball hitch between Oliver's tractor and the trailer. Neither Cwikla nor Oliver attached the safety chains.

After Oliver left the lot, he operated the truck in a safe and prudent manner, driving at an appropriate speed. When he reached a hill overlooking a bridge, he saw three bicyclists riding along the roadway. Before he passed them, he slowed, beeped his horn, and moved to the center of the road. As he drove past the bicyclists, the trailer disengaged from the tractor and hit the bicyclists. If either the ball hitch or the safety chains had been properly attached, the trailer would not have disengaged and struck the bicyclists.

On May 9 and 10, 1996, the State conducted an inquest to determine the cause of the accident. At the

inquest, evidence was presented which showed that prior to this accident, no Steenberg tractor-trailer had ever disengaged causing injury, and there had never been any previous problem with the utility trailer or its hitch, although it was difficult to determine when the hitch was locked. However, Steenberg had not established a procedure to ensure that the ball hitch and safety chains were both secure before a tractor-trailer entered a public roadway. At the conclusion of the proceeding, the jury concluded that probable cause existed to charge Steenberg with two counts of second-degree reckless homicide, pursuant to § 940.06, STATS.

On September 11, 1996, the State filed an information charging Steenberg with two counts of homicide by the negligent operation of a vehicle, pursuant to § 940.10, STATS., and one count of causing great bodily harm by the negligent operation of a vehicle, pursuant to § 346.62(4), STATS. The circuit court found probable cause to believe that Steenberg committed the crimes in the information. Thereafter, Steenberg filed a motion to dismiss the information on the grounds that no probable cause existed to charge Steenberg with criminal negligence in the operation or handling of a vehicle. The circuit court denied the motion to dismiss.

On October 1, 1997, a trial was conducted before the circuit court on stipulated facts from the inquest. The court convicted Steenberg of all three offenses on the grounds that the Steenberg employees, acting within the scope of their employment, were negligent for failing to attach the safety chains; that Steenberg failed to ensure that necessary safety procedures were followed by employees in order to avoid a substantial risk of death or great bodily harm; and that the lack of the safety chains was a cause of the accident. This appeal followed.

## DISCUSSION

**Standard of Review.**

■

This case presents a question of statutory interpretation, which we review *de novo. Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997).

■

In reviewing the sufficiency of the evidence to support a criminal conviction,[1] we do not substitute our judgment for that of the trier of fact unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *State v. Holtz*, 173 Wis. 2d 515, 518, 496 N.W.2d 668, 669 (Ct. App. 1992).

**Section 940.10, STATS.[2]**

Under Wisconsin's homicide by the negligent operation of a vehicle statute, "[w]hoever causes the death of another human being by the negligent operation or

---

[1] While § 346.62(4), STATS., appears in the traffic code, violating its provisions is a criminal offense. *State v. King*, 187 Wis. 2d 548, 566, 523 N.W.2d 159, 165 (Ct. App. 1994).

[2] While the judgment appealed from contains a conviction for violating § 346.62(4), STATS., as well as two convictions under § 940.10, STATS., Steenberg's only contentions in regard to § 346.62(4) on appeal are that the trailer is not a "vehicle" and Oliver was not "operating" a vehicle. Because we resolve these issues in the context of § 940.10 on a basis that applies to § 346.62(4) as well, we do not separately address them in regard to § 346.62(4).

handling of a vehicle is guilty of a Class E felony."
Section 940.10, STATS.

Steenberg claims that § 940.10, STATS., does not
apply to it as a matter of law because: (1) corporations
cannot be charged with negligent vehicular homicide;
(2) the trailer was not a "vehicle" and Steenberg was
not "operating" or "handling" it; and (3) Oliver was not
acting within the scope of his employment when he
failed to hookup the safety chains.

### 1. *Corporations and negligent vehicular homicide*.

Steenberg contends that § 940.10, STATS., does not
apply to it because corporations cannot be charged with
negligent vehicular homicide. We previously addressed
this argument in *State v. Richard Knutson, Inc.*, 196
Wis. 2d 86, 93–107, 537 N.W.2d 420, 422–427 (Ct. App.
1995), and we concluded that corporations may be
charged with and convicted of homicide by the negli-
gent operation of a vehicle in violation of § 940.10. We
do not have the authority to overrule our own opinions.
*Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d
246, 256 (1997). Therefore, *Knutson* conclusively
decides this question.

### 2. *Statutory language*.

Under § 939.22(44), STATS., a "vehicle" is "any self-
propelled device for moving persons or property or pull-
ing implements from one place to another, whether
such device is operated on lands, rails, water, or in the
air." The word "operation" is not defined in the criminal
code; however, the word "operate" is defined in the

traffic code under § 346.63(3)(b), STATS., as "the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." Finally, since the word "handling" is not defined in the statutes, we look to the standard dictionary definition for guidance.[3] The word "handle" means "[t]o control, direct, to deal with, to act upon, to perform some function with regard to or to have passed through one's hands." BLACK'S LAW DICTIONARY 716 (6th ed. 1990).

No Wisconsin case addresses the maintenance, loading or method of attaching a trailer to a tractor as a basis for criminal negligence; however, the statutory language is broad enough to encompass such a situation. Although the trailer itself was not a "self-propelled device," it was attached to a self-propelled device, the tractor, by the coupling. Once the tractor and trailer were connected, they became a tractor-trailer unit, and this unit was a "vehicle" for the purposes of § 940.10, STATS. The coupling device and the safety chains, which were supposed to connect the tractor and trailer, are the very mechanisms that Steenberg negligently controlled. Either Oliver or Cwikla, or both, failed to properly perform the functions of coupling the tractor to the trailer and attaching the safety chains; therefore, they were negligent in "handling" the vehicle.

---

[3] When not specifically defined in the statutes, a non-technical term must be given its ordinary and accepted meaning and that meaning may be ascertained from a recognized dictionary. *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145, 149 (1986); *State v. Lopez*, 207 Wis. 2d 413, 432, 559 N.W.2d 264, 271 (Ct. App. 1996).

### 3. Scope of employment.

Steenberg contends that it cannot be criminally liable for the conduct of its employee, Oliver, because Oliver knew that he was responsible for safely maintaining and coupling the tractor-trailer. Therefore, Steenberg argues that Oliver was not acting within the scope of his employment when he negligently coupled the tractor-trailer because Steenberg employees are instructed not to act negligently. Steenberg's argument is not supported by Wisconsin law.

A corporation can be held liable for the acts of its employees committed within the scope of employment. *Vulcan Last Co. v. State*, 194 Wis. 636, 643, 217 N.W. 412, 415 (1928); *State v. Dried Milk Prods. Co-op.*, 16 Wis. 2d 357, 361, 114 N.W.2d 412, 415 (1962); *Knutson*, 196 Wis. 2d at 101–107, 537 N.W.2d at 425–427. Employees act within the scope of employment when they perform acts which they have express or implied authority to perform and their actions benefit or are intended to benefit the employer.

An employer can be held responsible for the acts of an employee performed within the scope of employment, even though the conduct of the employee is contrary to the employer's instructions or stated policies. *Vulcan Last*, 194 Wis. at 643, 217 N.W. at 415. As the supreme court stated:

> Corporations must of necessity act through their agents. When these agents act within the scope of their authority their acts are the acts of the corporation, for which the corporation is liable both civilly and criminally. If the acts are within the scope of the authority of the agent, the corporation

> is liable criminally for the act although the act may not have been expressly authorized by the corporation, even if the corporation has expressly forbidden its agent to act in the manner that made it answerable to punishment under the criminal law.

*Id.* (citations omitted).

The relationship described in *Vulcan Last* is precisely the relationship between Steenberg and Oliver and between Steenberg and Cwikla. Steenberg gave both Oliver and Cwikla express authority to drive, maintain, and couple tractor-trailers, and these acts were performed exclusively for the benefit of Steenberg. When Cwikla improperly coupled the tractor-trailer and when Oliver failed to check the hookup and attach the safety chains, each was acting within the scope of his employment. That Oliver and Cwikla did not heed Steenberg's warnings to use caution and that Oliver did not undertake responsibility for the safety and maintenance of his tractor-trailer does not place their negligent actions outside the scope of employment. Therefore, Steenberg may be liable for the acts of its employees, Oliver and Cwikla.

**Sufficiency of the Evidence.**

Homicide by the negligent use of a vehicle has three elements: (1) the defendant caused a death, (2) by criminal negligence, (3) in the operation or handling of a vehicle. *Knutson,* 196 Wis. 2d at 109, 537 N.W.2d at 428. One cannot be held criminally liable for ordinary negligence under § 940.10, STATS. Rather, the negligent act must rise to the level of criminal negligence. *Knutson,* 196 Wis. 2d at 109, 537 N.W.2d at 428.

> Criminal negligence differs from ordinary negligence in two respects. First, the risk is more serious—death or great bodily harm as opposed to simple harm. Second, the risk must be more than an unreasonable risk—it must also be substantial. Criminal negligence involves the same degree of risk as criminal recklessness—an unreasonable and substantial risk of death or great bodily harm. The difference between the two is that recklessness requires that the actor be subjectively aware of the risk, while criminal negligence requires only that the actor should have been aware of the risk—an objective standard.

*Id.* at 110, 537 N.W.2d at 428 (citation omitted).

In *Knutson*, we concluded that evidence supported a corporation's conviction of negligent vehicular homicide pursuant to § 940.10, STATS., for an act of its backhoe operator whose vehicle touched a power line causing the electrocution of another worker. *Id.* The corporation did not comply with written Occupational Safety and Health Act (OSHA) safety guidelines applying to the job, and failed to follow safety guidelines required by the job contract. Those guidelines put the corporation on notice that working in the vicinity of high voltage electrical lines posed a substantial risk to its employees. Even though the corporation knew or should have known of the danger, it took no precautions such as shutting down the electricity to the lines or erecting barriers. Instead, it merely warned its employees about the overhead lines. *Id.* at 110–111, 537 N.W.2d at 429. Therefore, we concluded that the jury could reasonably find that the corporation did not use due diligence to ensure the safety of its employees, and its conduct created a substantial and unreasonable risk of death or great bodily harm. *Id.* Furthermore, had the corporation complied with the various safety

requirements, the electrocution death would likely not have happened. *Id.* at 111, 537 N.W.2d at 429. Therefore, the jury could also reasonably find that the corporation's failure to take necessary precautions for the safety of its employees was a cause of the electrocution death. *Id.*

In applying the rationale of *Knutson* to the case at hand, we note that both state and federal law require that safety chains be attached when a trailer is being pulled on a public highway. Section 347.47(3), STATS.; WIS. ADM. CODE § TRANS 308.12; 49 C.F.R § 393.70(d). The potential for death or great bodily harm, if a tractor disengages from a trailer while driving on a public highway was not contested by Steenberg. In addition, Steenberg had an express policy of requiring its drivers to attach safety chains and to maintain their vehicles. Therefore, the circuit court's finding that Steenberg knew or should have known that not using safety chains posed a substantial risk of death or great bodily harm to people using public highways is well grounded in the record. However, even though Steenberg knew or should have known of the danger, it had no procedure which required a safety check, such as a form checklist the driver was required to complete, showing he had attached the safety chains, before he could begin his driving assignment. Steenberg did not use due diligence to ensure that its employees properly coupled the tractor-trailers and attached the safety chains. Therefore, we conclude that the evidence, viewed most favorably to the State and the convictions, supports the circuit court's finding that Steenberg's conduct was a cause of the bicyclists' deaths because had there been a checking procedure, established and enforced, the safety chains would have been attached; the trailer

would not have detached from the tractor; and the accident would likely not have happened.[4] Therefore, we affirm the judgment of the circuit court.

## CONCLUSION

Sections 940.10 and 346.62(4), STATS., apply to Steenberg, a corporation, whose employees were acting within the scope of their employment when they negligently attached a tractor to a trailer. The evidence was sufficient to convict Steenberg of negligent vehicular homicide and causing great bodily harm by the negligent operation of a motor vehicle because Steenberg's failure to establish and enforce a procedure to ensure that its employees properly coupled the tractor-trailer and attached the safety chains created a substantial risk of death or great bodily harm which was a cause of the deaths and the injuries to the bicyclists.

*By the Court.*—Judgment affirmed.

---

[4] The charges in the information and the circuit court's decision that probable cause existed to charge Steenberg with negligent vehicular homicide and causing great bodily harm by the negligent operation of a motor vehicle were based on facts from the inquest which also formed the basis for the circuit court's determination that Steenberg was guilty beyond a reasonable doubt of vehicular homicide. Because we conclude those facts support the convictions of negligent vehicular homicide, we do not address Steenberg's arguments concerning the information and the prosecutor's charging discretion, both of which require lesser quantums of proof than the convictions.