# United States Court of Appeals
## For the First Circuit

No. 07-1553

UNITED STATES OF AMERICA,

Appellee,

v.

JEFFREY ALLEN HERRICK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,

and Besosa[*], District Judge.

Susan E. Taylor, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

October 17, 2008

---

[*]Of the District of Puerto Rico, sitting by designation.

**BESOSA**, <u>District Judge</u>.   On November 1, 2006, appellant Jeffrey Allen Herrick plead guilty to a one-count information charging him with possessing a firearm after he had already been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   He was sentenced on March 30, 2007.   To determine Herrick's sentence, the district court relied on the United States Sentencing Guidelines ("Guidelines").   On appeal, Herrick argues that the district court incorrectly classified a prior Wisconsin conviction for motor vehicle homicide as a crime of violence under Guideline section 4B1.2(a).   Subsequent to the briefing and oral argument in this case, the Supreme Court decided <u>Begay</u> v. <u>United States</u>, 553 U.S. ___, 128 S.Ct. 1581 (2008).   We requested additional briefing from the parties concerning the impact of <u>Begay</u> on this case.   Now, because of the lessons contained in <u>Begay</u>, we vacate the sentence imposed by the district court and remand for resentencing consistent with this opinion.

I.   <u>Facts</u>

On November 1, 2006, Herrick plead guilty to a single offense of being a felon in possession of a firearm in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   The plea agreement contained a waiver of Herrick's right to appeal his conviction or any term of imprisonment that did not exceed the number of months provided for total offense level 10 (regardless of the Criminal History Category ("CHC") determined by the court).   Herrick accepted the

- 2 -

government's proffered evidence as true, including the assertion that at one time or another he possessed three different firearms. The prosecution's evidence supporting conviction was based upon admissions made by Herrick and evidence collected from his home.

Herrick was a convicted felon who had engaged in unlawful hunting activities and had used a shotgun owned by another individual, Kevin Farley, to shoot a bear and a "bull beef critter." A .22 caliber rifle and .20 gauge shotgun shells were found at Herrick's residence during a January 10, 2006 search. Also found was a photograph of Herrick holding a rifle.

Herrick claimed that he bought the .22 caliber rifle, a youth model, for his wife to use for protection when he was away from home. He also claimed that he shot the steer only because it was to be butchered the next day and that it needed to be bled and gutted. Herrick also explained that the seized photograph of him with a rifle memorialized a hunting episode with his uncle but that he had actually hunted with a bow and arrow. The rifle, according to Herrick, was only in the photograph because a hunting guide suggested that it be included in the picture.

The United States Probation and Pretrial Services Pre-Sentence Report ("PSR") assigned Herrick a total offense level of 19 and a

Criminal History Category ("CHC") of V.[1]  The base offense level calculation depended in part upon the PSR's categorization of Herrick's 1995 Wisconsin conviction for homicide by negligent operation of a motor vehicle as a "crime of violence" pursuant to Guidelines section 4B1.2(a).  The categorization of Herrick's Wisconsin conviction as a "crime of violence" increased his base offense level under the Guidelines and it disqualified him from utilizing the "sporting purposes" exception found at Guidelines section 2K2.1(b)(2).

Herrick objected to the calculation of his criminal history on two grounds:  first, he argued that it was error for his Wisconsin conviction to be categorized as a "crime of violence"; and second, he claimed that two of his other convictions should not be considered as separate offenses.  The district judge adopted

[1]  The total offense level was calculated as follows: (1) Herrick had a base offense level of twenty pursuant to Guidelines section 2K2.1(a)(4) based on the crime to which he plead guilty and a prior conviction for a crime of violence; (2) there was a two level enhancement pursuant to Guidelines section 2K2.1(b)(1)(A) because the offense involved between three and six firearms.  There was a three-level reduction, however, for acceptance of responsibility, which left Herrick at a total offense level of nineteen.

The PSR also assigned Herrick a CHC of V based on a finding that his prior convictions provided him with a total of twelve criminal history points.  The twelve points were produced by adding three points for a 1995 Wisconsin conviction for homicide by negligent operation of a vehicle, and another three points each for three different convictions relating to burglary or theft.  The maximum statutory term for Herrick was ten years.  The Guidelines range for Herrick, at a total offense level of nineteen and a CHC of V, was 57 to 71 months.

Herrick's second objection, treating two of his convictions as related for sentencing purposes pursuant to Guidelines section 4A1.2(a), which resulted in a reduction of his Criminal History Category from V to IV. The judge disagreed with Herrick, however, regarding the classification of the Wisconsin conviction.

The district court analyzed the Wisconsin vehicular homicide statute, Wis. Stat. Ann. § 940.10, and a related statute defining "criminal negligence," Wis. Stat. Ann. § 939.25, pursuant to the conditional two-step approach described in United States v. Teague, 469 F.3d 205 (1st Cir. 2006) and United States v. Richards, 456 F.3d 260 (1st Cir. 2006). Pursuant to the first step of the test, the district court found that Herrick's Wisconsin conviction was properly classified as a crime of violence under the Guidelines because the Wisconsin statute required that Herrick be engaged in conduct presenting a serious potential risk of physical injury to another in order to be convicted. While the district judge did not adjust Herrick's total offense level downward based upon the categorization of his prior Wisconsin conviction, he did grant Herrick an additional downward departure in his CHC (from IV to

III), finding that Herrick's CHC overstated the likelihood that he would re-offend.[2]

With a CHC of III and a total offense level of 19, the Guidelines range for Herrick was imprisonment for 37 to 46 months. The Assistant United States Attorney recommended that Herrick be given the minimum Guidelines term. The district court agreed, sentencing him to 37 months imprisonment, plus two years of supervised release and a monetary assessment of $100.00. Fines were waived. The district court did not enforce Herrick's appeal waiver because his total offense level was greater than the threshold level of 10 established in the waiver provision in the plea agreement.

II. Standard of Review

Questions of law involved in sentencing determinations are afforded *de novo* review. United States v. Carrasco-Mateo, 389 F.3d 239, 243 (1st Cir. 2004).

---

[2] This departure was granted pursuant to Guidelines section 4A1.3, taking into consideration that Herrick's last conviction was 12 years old. The district court denied downward departures which were sought by Herrick on the following three grounds: (1) that the conduct alleged constituted aberrant behavior pursuant to Guidelines section 5K2.2; (2) that a lengthy incarceration would have a deleterious effect upon his family pursuant to Guidelines section 5H1.6; and (3) that abuse Herrick suffered while incarcerated in a Wisconsin prison constituted a mitigating circumstance.

III. Discussion

A.    Application of the "formal categorical approach"

The sole issue on appeal is whether the district court committed error by classifying Herrick's 1995 Wisconsin conviction for motor vehicle homicide ("vehicular homicide") as a "crime of violence" pursuant to Guidelines section 4B1.2(a). A crime of violence, as defined in the Guidelines, "means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that -

> 1.    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> 2.    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise <u>involves conduct that presents a serious potential risk of physical injury to another</u>.

U.S.S.G. § 4B1.2(a) (emphasis added).

This court takes a two-step "formal categorical approach" to the question of whether a putative predicate felony constitutes a crime of violence under the Guidelines. <u>See</u> <u>United States</u> v. <u>Teague</u>, 469 F.3d 205, 208 (1st Cir. 2006); <u>United States</u> v. <u>Richards</u>, 456 F.3d 260, 262-63 (1st Cir. 2006); <u>United States</u> v. <u>Winn</u>, 364 F.3d 7, 9 (1st Cir. 2004). Pursuant to the first step, where a violation of the statute underlying the prior conviction necessarily involves every element of a violent felony, the mere fact of conviction establishes the putative predicate offense as a violent felony. <u>Richards</u>, 456 F.3d at 263 (citing <u>Taylor</u> v. <u>United</u>

States, 495 U.S. 575, 602 (1990)).  If, however, the underlying statute criminalizes conduct that would not constitute a violent felony as well as conduct that would constitute a violent felony, then the putative predicate offense qualifies as a violent felony only if the particular conviction actually embodied every element of a violent felony.  Id.  To apply this principle, the jury must find, or the defendant must admit (in the context of a guilty plea), all the elements of a violent felony.  In applying this second step of the categorical approach, the court must restrict its review to the record of conviction.  Id.  Typically, the record includes the charging document, jury instructions, and verdict form, or in the context of a guilty plea, the written plea agreement and the transcript of the change-of-plea colloquy.  Id. (citing Shepard v. United States, 544 U.S. 13, 26 (2005)).

Herrick's 1995 conviction for motor vehicle homicide necessarily involves every element of a violent felony, thus meeting the first step of the two-prong categorical approach.  The Wisconsin statute, entitled "Homicide by negligent operation of vehicle", under which Herrick was convicted, provides as follows:

> 1.    Whoever causes the death of another human being by the negligent operation or handling of a vehicle is guilty of a Class G felony.
>
> 2.    Whoever causes the death of an unborn child by the negligent operation or handling of a vehicle is guilty of a Class G felony.

WIS. STAT. § 940.10.

- 8 -

The term "negligent" as used in Wis. Stat. § 940.10 is defined in Wis. Stat. § 939.25 as follows:

> 1. In this section, "criminal negligence" means ordinary negligence to a high degree, consisting of conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another, except that for purposes of ss. 940.08(2), 940.10(2) and 940.24(2), "criminal negligence" means ordinary negligence to a high degree, consisting of conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to an unborn child, to the woman who is pregnant with that unborn child or to another.
>
> 2. If criminal negligence is an element of a crime in chs. 939 to 951 or s. 346.62, the negligence is indicated by the term "negligent" or "negligently".

Wis. Stat. § 939.25.

Reading the two statutes together (section 940.10 and section 939.25), the Wisconsin motor vehicle homicide statute requires a determination that the accused was criminally negligent, defined as "conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another." Wis. Stat. § 939.25. This definition of criminal negligence fits neatly within the Guidelines definition for crime of violence: "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). In fact, this court understands the Wisconsin definition of criminal negligence to be triggered at a higher risk threshold than that incorporated into the "crime of violence" definition. While both standards call for an objective

- 9 -

determination,[3] criminal negligence applies only to conduct creating a substantial and unreasonable risk of death or great bodily harm, which necessarily includes conduct presenting a serious potential risk of physical injury. The inverse is not true, however. Conduct posing a serious potential risk of physical injury does not necessarily rise to the level of risking death or great bodily harm.

Thus, because criminal negligence is a required element for a conviction under the Wisconsin motor vehicle homicide statute, and a finding of criminal negligence necessarily meets the standard for a crime of violence, there is no need for us to undertake step two of the categorical analysis outlined above. There is no possible formulation of the Wisconsin motor vehicle homicide statute that

---

[3] "[T]he standard for criminal negligence is an objective one; defendant's conduct is judged from the perspective of a reasonably prudent person." State v. Barman, 183 Wis.2d 180, 203, 515 N.W.2d 493, 503 (Wis.App. 1994), review denied 520 N.W.2d 90 (1994).

would criminalize conduct that would not constitute a violent felony under the formal categorical approach to Guidelines.[4]

The analysis, however, does not end there. On April 16, 2008, after the parties briefed this Court and presented their oral arguments, the Supreme Court decided Begay v. United States, 553 U.S. ___, 128 S.Ct. 1581 (2008), introducing a new test for determining whether a prior felony qualifies as a "violent felony" pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). Precedent in this circuit, as well as in others, requires the application of case law interpreting "violent felony" in ACCA to "crime of violence" in U.S.S.G. § 4B1.2(1) because of the substantial similarity of the two sections. See United States v. Williams, 529 F.3d 1, 6-7 (1st Cir. 2008); United States v. Winter, 22 F.3d 15, 18 n.3 (1st Cir. 1994); see, e.g., United

---

[4] Wisconsin case law supports the plain meaning of the criminal negligence element of the motor vehicle homicide statute as requiring, at a minimum, a serious risk of physical injury to another. See, e.g., State v. Schutte, 295 Wis.2d 256, 272, 720 N.W.2d 469, 476 (Wis.App. 2006), review denied 297 Wis. 2d 320, 724 N.W. 2d 203 (2006) ("The degree of negligence required for criminal culpability is different from ordinary negligence in that the negligent conduct must 'in general create a risk of serious consequences, e.g., death or great bodily harm,' and there must be a 'high probability that the [serious] consequences will result from' the conduct.") (quoting Hart v. State, 75 Wis.2d 371, 383 n.4, 249 N.W.2d 810, 815 (Wis. 1977)); State v. Richard Knutson, Inc., 196 Wis.2d 86, 110, 537 N.W.2d 420, 428 (Wis.App. 1995), review denied, 540 N.W.2d 200 (1995) ("Criminal negligence differs from ordinary negligence in two respects. First, the risk is more serious-death or great bodily harm as opposed to simple harm. Second, the risk must be more than an unreasonable risk-it must also be substantial.").

States v. Archer, 531 F.3d 1347 (11th Cir. 2008) (holding on remand that a Florida conviction for carrying a concealed weapon is not a crime of violence under U.S.S.G. § 4B1.2(1) after the Eleventh Circuit's earlier opinion was vacated by the Supreme Court in light of Begay). Given the relevance of Begay to this case, we requested and received additional briefing from the parties.

The application of Begay to this case is not as simple as placing a square peg in a square hole. Not only was the Begay opinion tailored to the crime at hand, New Mexico's Driving Under the Influence law, see Begay, 128 S.Ct. at 1589 (describing the majority's position as "a piecemeal, suspenseful, Scrabble-like approach to the interpretation" of ACCA) (Scalia, J., concurring), but it was also a close decision. Williams, 529 F.3d at 7. Moreover, the Court used language subject to varying interpretations in its new test.

As a starting point, the Begay majority posed a two-part question: is the crime at issue "roughly similar" in kind, as well as in degree of risk posed, to the example crimes listed immediately before the "otherwise" clause (i.e., burglary, arson, extortion, or crimes involving use of explosives)?[5] Begay, 128 S.Ct. at 1585. There the Supreme Court assumed that the lower courts were correct in concluding that DUI presented the requisite

_____

[5] The relevant language of the Guidelines only differs in that it specifies "burglary of a dwelling" instead of simple burglary. See U.S.S.G. § 4B.1.2(a).

- 12 -

level of risk.  Id. at 1584.  Nonetheless, the Court found that DUI was not a violent felony pursuant to 18 U.S.C. § 924(e)(2)(B)(ii) because "[i]t is simply too unlike the provision's listed examples[.]"  Id.  In other words, although DUI was roughly similar in degree of risk posed, it was not roughly similar in kind.

The Supreme Court elucidated the similar-in-kind requirement by finding that all of the examples typically involve "purposeful, violent and aggressive conduct."[6]  Id. at 1586 (internal citations omitted).  The Supreme Court went on to use "purposeful" interchangeably with "intentional."  Id. at 1587-88.  Perhaps because it is common sense that a DUI is not violent or aggressive in an ordinary sense, the Supreme Court did not define those terms or explain in other than conclusory terms why a DUI was not violent or aggressive.  We note, therefore, that aggressive may be defined as "tending toward or exhibiting aggression," which in turn is defined as "a forceful action or procedure (as an unprovoked attack) esp. when intended to dominate or master."  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 24 (11th ed. 2003).  Violence may be defined as

---

[6]  The Supreme Court reasoned that conduct of this nature "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim."  Begay, 128 S.Ct. at 1586.  Although that particular rationale underlying the ACCA is not always applicable in the broader Guidelines context, it applies to felon-in-possession crimes such as that at issue here. Moreover, when the sentencing is for other crimes, the Guidelines' desire to reflect the defendant's likelihood to engage in future violent conduct strikes us as an equivalent rationale for construing the residual clause as limited to conduct similar in nature to the listed crimes.

"marked by extreme force or sudden intense activity." Id. at 1396. Regardless of possible nuance in meaning, we understand that all three types of conduct – i.e., purposeful, violent and aggressive – are necessary for a predicate crime to qualify as a "violent felony" under ACCA, or a "crime of violence" under the Guidelines. See United States v. Williams, ___ F.3d ___, 2008 WL 3266912, *6 (8th Cir. Aug. 11, 2008) ("All characteristics should typically be present before an 'otherwise' crime reaches the level of an example crime.").

Applying the Begay standard to this case, we conclude that Wisconsin's vehicular homicide felony is not a crime of violence pursuant to U.S.S.G. § 4B.1.2(a). Based on the statutory definition of criminal negligence in Wisconsin, vehicular homicide meets if not exceeds the necessary degree of risk to be a crime of violence: it poses "a serious potential risk of physical injury to another." It is not, however, similar in kind to the enumerated offenses. Although it is no doubt violent, as a typical vehicular homicide involves the death of a victim resulting from a forceful collision, it is not necessarily aggressive, a term that dovetails with purposeful because it involves a degree of intent. Intent, however, is not an element of Wisconsin's vehicular homicide provision.[7]

---

[7] Although the government argued convincingly that vehicular homicide is violent, it made no effort to analyze it as purposeful or aggressive.

To recap, vehicular homicide for purposes of the Wisconsin statute under which Herrick was convicted requires criminal negligence, defined as conduct that the actor should realize creates a substantial and unreasonable risk of death or great bodily harm to another. WIS. STAT. §§ 939.25, 940.10. This is an objective and not a subjective standard. State v. Steenberg Homes, Inc., 223 Wis.2d 511, 522, 589 N.W.2d 668, 673 (1998) ("Criminal negligence involves the same degree of risk as criminal recklessness-an unreasonable and substantial risk of death or great bodily harm. The difference between the two is that recklessness requires that the actor be subjectively aware of the risk, while criminal negligence requires only that the actor should have been aware of the risk-an objective standard.") (quoting Knutson, 196 Wis. 2d at 110, 537 N.W.2d at 428). Thus, it cannot be said that someone convicted of vehicular homicide under the Wisconsin statute knew of the risk involved in his or her conduct, nor can it be said that such a person intended to kill or expose others to risky conduct. Although vehicular homicide's mens rea of criminal negligence under this statute surpasses that of the DUI at issue in Begay, which the Supreme Court described as a strict liability crime, it is below that of other crimes that the Begay majority listed as crimes that do not fall under the residual clause.

For example, the Begay court cited a federal statute penalizing those who "recklessly" tamper with consumer products as

an example of a crime that would have qualified as a violent felony if there were no "similar in kind" requirement. Begay, 128 S.Ct. at 1587 (citing 18 U.S.C. § 1365(a)). The Supreme Court also cited an Arkansas statute which penalizes those who "recklessly cause pollution of the waters or air of the state" as another example of a crime similar enough in risk but not in kind to fall under the test. Id. at 1587 (Ark. Code Ann. § 8-4-103(a)(2)(A)(ii)). Looking to these examples from Begay, the Second Circuit held that New York's reckless endangerment law does not qualify as a crime of violence under the Guidelines. United States v. Gray, ___ F.3d ___, 2008 WL 2853470, *3 (2d Cir. Aug. 4, 2008) (analyzing N.Y. PENAL LAW § 120.25 ("A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person.")). As the Second Circuit explained, "[r]eckless endangerment on its face does not criminalize purposeful or deliberate conduct." Id. at *4. This case does not require us to decide whether crimes with a recklessness mens rea could ever come within the residual clause. We conclude only that vehicular homicide involving criminal negligence does not involve the requisite purposeful, intentional or deliberate conduct. Accordingly, the vehicular homicide

- 16 -

provision under which Herrick was convicted is not a crime of violence pursuant to the residual clause of U.S.S.G. § 4B.1.2(a).[8]

IV.  Conclusion

For the reasons discussed above, the sentence imposed by the district court on March 30, 2007 is vacated and the case is remanded for resentencing consistent with this opinion.

---

[8] We note that the commentary to U.S.S.G. § 4B1.2(a) includes manslaughter as a crime of violence without distinguishing between voluntary and involuntary manslaughter, arguably suggesting that the mens rea for the crime is not determinative.  However, just as the Supreme Court limited the broad language in the ACCA to crimes involving "purposeful, violent and aggressive conduct," so too is it logical to construe the reference to manslaughter as extending only to those crimes involving the requisite mens rea.  Vehicular homicide is related to but distinct from involuntary manslaughter. See WHARTON'S CRIMINAL LAW § 170 (15th ed., vol. 2, 1994) ("In view of the reluctance of juries to convict in motor vehicle fatality cases, many jurisdictions have carved out of manslaughter a separate offense, sometimes called 'vehicular homicide', for which a lesser punishment is provided.")  The commentary does not undermine our conclusion that it is necessary to examine the mens rea required for a conviction of vehicular homicide within a particular jurisdiction to determine if it is sufficiently similar to that of the crimes listed in the otherwise clause.  Indeed, the decision of some jurisdictions to remove vehicular homicide from the scope of manslaughter, and imposing less serious consequences, reinforces our conclusion that vehicular homicide – as in this case – will at times fall outside the scope of the clause.