**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Curtis Red FOX, Defendant–Appellant.**

**No. 87–1469.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1988.

Decided April 25, 1988.

Rehearing and Rehearing En Banc Denied June 23, 1988.

Michael F. Lefkow, Chicago, Ill., for defendant-appellant.

Daniel P. Bach, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

On November 8, 1986 Curtis Red Fox, an inmate at the federal correctional facility at Oxford, Wisconsin, was discovered to be in possession of a two and one-half inch "U"-shaped metal nail. The object was sharpened on both ends and tape was wrapped around its center. Fox was convicted of "possessing" an "object that may be used as a weapon" while an inmate at a federal correctional facility in violation of a section of the federal prison contraband statute then in effect, 18 U.S.C. § 1791(a)(2) (1984) (current version, as amended at 18 U.S.C. § 1791(a)(2) (1986)). He appeals from that conviction.

I

Appellant asserts that the district court erred when it adopted the magistrate's rul-

ing granting the government's pre-trial motion *in limine*. That action by the district court prevented Fox from offering any evidence as to the reason or purpose for which he was in possession of the sharpened nail. Fox also maintains that the district court erred further when it instructed the jury in a manner that precluded it from considering, in determining his guilt or innocence on the charged § 1791(a)(2) offense, whether he intended to use the nail as a weapon. Appellant's claims of error in the court below rest on his contention that in enacting the Comprehensive Crime Control Act of 1984, Congress contemplated that § 1791(a)(2) would proscribe only the possession of an object which was intended for use as a weapon. In the alternative, Fox asserts that if § 1791(a)(2) is not interpreted to have embraced that *mens rea* element, it was constitutionally void for vagueness for failing to require criminal intent as an element of the offense it proscribed.

## II

Because the district court's challenged decision to exclude evidence was based solely on the resolution of a legal issue, i.e., whether possession of an object with intent to use it as a weapon is an element of the offense defined in the version of 18 U.S.C. § 1791(a)(2) in effect on November 8, 1986, our review is *de novo*. *United States v. Gentile*, 816 F.2d 1157, 1161 (7th Cir.1987).[1] Our task here is one of discerning what, if any, *mens rea* element Congress intended to incorporate in the crime defined by the 1984 version of § 1791(a)(2). "[T]he starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "[T]he language of the statute is the most reliable indicator of congressional intent. It is that

language which is chosen with the most care, subjected to the greatest scrutiny and actually voted on by Congress and signed by the President." *Monterey Coal Company v. Federal Mine Safety and Health Review Commission*, 743 F.2d 589, 595–96 (7th Cir.1984). Thus, our analysis begins with an examination of the language of § 1791(a).

The version of § 1791(a) in effect in November, 1986 provided:

(a) Offense—A person commits an offense if, in violation of a statute, or a regulation, rule or order issued pursuant thereto—

(1) he provides, or attempts to provide, to an inmate of a Federal penal or correctional facility—

(A) a firearm or destructive device;

(B) any other weapon or object that may be used as a weapon or as a means of facilitating escape;

(C) a narcotic drug as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802);

(D) a controlled substance, other than a narcotic drug, as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802), or an alcoholic beverage;

(E) United States currency; or

(F) any other object; or

(2) being an inmate of a Federal penal or correctional facility, he makes, possesses, procures, or otherwise provides himself with, or attempts to make, possess, procure, or otherwise provide himself with, anything described in paragraph (1).

We must carefully parse the language of § 1791(a) in order to precisely discern the nature of the crime defined by § 1791(a)(2). Our goal is to separate and correctly identify the two essential elements of the § 1791(a)(2) offense, i.e., the conduct proscribed (*actus reus*) and the criminal intent (*mens rea*) with which that conduct must be engaged in.

1. In denying Fox's motion for reconsideration of the magistrate's order granting the government's motion *in limine*, the district court stated:

I will adopt the magistrate's ruling in this regard and preclude the defendant from putting in any evidence as to what he might have

intended to do with the sharpened nail on the grounds that the statute talks about the crime of possessing something that can be used as a weapon, and it says nothing about any intent on the part of the defendant to use it as a weapon.

**154**

The language of § 1791(a)(2), in concert with sub-section (a)(1), clearly delineates the *actus reus* of the crime at issue as the possession of an "object capable of being used as a weapon." Section 1791(a)(2) fails to expressly identify a *mens rea* element. That in most all circumstances, the statutory definition of a crime must embrace a *mens rea* element is clear. *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). "[S]trict liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements." *United States v. United States Gypsum Co.*, 438 U.S. 422, 437, 98 S.Ct. 2864, 2874, 57 L.Ed.2d 854 (1978). Nevertheless, their use is very limited and they are accorded a "generally disfavored status." 438 U.S. at 437–38, 98 S.Ct. at 2873–74.

■ The failure of Congress to include an express statement of a *mens rea* requirement within the language of § 1791(a)(2) (or elsewhere in the remainder of § 1791(a)) does not warrant the inference that it meant to eliminate the requirement of criminal intent from the offense therein defined. *See United States Gypsum*, 438 U.S. at 438, 98 S.Ct. at 2874 ("Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.") *See also Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985); *Morissette*, 342 U.S. at 263, 72 S.Ct. at 250 (holding that the mere omission from a criminal statute of any mention of intent will not be construed as eliminating that element from the crime therein denounced). Nothing in the wording of § 1791(a) or its underlying legislative history provides any indication that Congress intended the statute to create a strict liability offense. Therefore, we are justified in presuming that Congress contemplated that violation of § 1791(a)(2) would require

the act of "possess[ing]" an "object that may be used as a weapon" to be committed with a criminal intent. We must now ascertain what level of criminal intent is required for a § 1791(a)(2) violation.

The legislative history indicates that § 1791(a) was adopted in order to cure a defect in the second paragraph of 18 U.S.C. § 1792 (1948) whereby the possession by an inmate at a Federal penal or correctional institution of a weapon or similar substance or object designed to kill, injure or disable another was not a crime. S.Rep. 98–225 at 380, 98th Cong., 2d Sess., *reprinted in* 4 U.S.Code Cong. & Admin. News, 3182, 3520 (1984). The prior statute had been interpreted to bar only the introduction into, or movement from place to place within, a prison facility of a prohibited object by an inmate. *Id. See also United States v. Dixon*, 596 F.2d 178, 180 (7th Cir.1979).[2] Section 1791(a) was not intended to replace the existing statute pertaining to prison contraband. Rather, it was meant to "create a supplemental offense limited to the possession of particularly dangerous types of contraband." S.Rep. 98–225 at 380, 4 U.S.Code Cong. & Admin.News at 3520 (1984). Thus, even though the wording of what was formerly the second paragraph of § 1792 was not adopted in § 1791(a), the latter provision clearly was intended to incorporate the proscriptions of its predecessor.

Before the 1984 enactment of § 1791(a), our court had interpreted the second paragraph of 18 U.S.C. § 1792 to incorporate a *mens rea* requirement of an "intentional or knowing" state of mind. *Dixon*, 596 F.2d at 180. Other circuits had discerned the same *mens rea* requirement in § 1792. *See United States v. Roche*, 443 F.2d 98 (10th Cir.1971); *United States v. Battle*, 459 F.2d 64 (4th Cir.1972). We have been unable to find any decisions by a U.S. Court of Appeals attaching any other *mens rea* element to § 1792.

---

**2.** The second paragraph of the form of § 1792 in force prior to enactment of the Comprehensive Crime Control Act of 1984 read as follows: Whoever conveys into such institution [a Federal penal or correctional institution], or from place to place therein, any firearm, weapon, explosive, or any lethal or poisonous gas, or any other substance or thing designed to kill, injure or disable any officer, agent, employee, or inmate thereof, or conspires to do so— Shall be imprisoned for not more than ten years.

We can safely infer that in enacting the version of § 1791(a) contained in the Comprehensive Crime Control Act of 1984, Congress was aware both that the crime that this section established incorporated a criminal intent element and that the statute it was intended to supplement had been consistently interpreted to incorporate a *mens rea* element of a "knowing" or "intentional" state of mind. *See Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("where, ..., Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute"). In formulating the language of § 1791(a) Congress did not instruct that the *mens rea* element established under the predecessor statute was no longer to be employed. Accordingly, we must conclude that the language of § 1791(a) indicates that Congress intended the *mens rea* element of the crime set forth in § 1791(a)(2) to be a "knowing" or "intentional" state of mind.

There is no "errorless test" for determining when the meaning conveyed by statutory language is unambiguous. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Nevertheless, our analysis of the language of § 1791 points to the inference that in November, 1986 a violation of § 1791(a)(2) transpired when an inmate in a Federal penal or correctional facility knowingly or intentionally possessed an object that could have been used as a weapon. Unless we discover in the legislative history "a clearly expressed legislative intention to the contrary," we must regard the message the statutory language conveys as conclusive. *Bread Political Action Committee v. Federal Election Committee*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1238, 71 L.Ed.2d 432 (1982), *Consumer Product Safety Commission*, 447 U.S. at 108, 100 S.Ct. at 2056. *See also United States v. Charles George Trucking Co.*, 823 F.2d 685, 688 (1st Cir. 1987).

Appellant does not rely directly on the language of the statute nor does he cite any case law related to it in support of his claim that the *mens rea* element Congress intended § 1791(a)(2) to embrace was one of an intent to use the object possessed as a weapon. Fox bases his claim solely upon an excerpt drawn from page 381 of S.Rep. No. 98–225, 4 U.S.Code Cong. & Admin. News at 3521 (1984). That excerpt states: "Under proposed section 1793, however, conviction would be possible if from the facts it could be shown that, contrary to a statute, rule, regulation, or order, the defendant was knowingly making or possessing *an object which was intended for use as a weapon*." S.Rep. No. 98–225 at 381, 98th Cong. 2d Sess., *reprinted in* 4 U.S. Code Cong. & Admin.News at 3521 (1984) (emphasis supplied).

The view of the § 1791(a)(2) offense advocated by appellant would effectively transmute it into a specific intent crime, i.e., the knowing possession of an object that may be used as a weapon with the intent to use it as a weapon. We find nothing in the relevant legislative history to support that reading of the statute. Appellant's reliance on S.Rep. No. 98–225, is misplaced.

Our research discloses that S.Rep. No. 98–225 was promulgated in conjunction with the August, 1983 form of S. 1762 and did not address the final version of the statute enacted into law. S.Rep. No. 98–225 was issued by the Senate Judiciary Committee on August 3, 1983. Section 1109(a) of the version of S. 1762 which that Report refers to would have added a new § 1793 to Title 18 of the United States Code that would have made it a crime for an inmate at a Federal penal or correctional institution to "possess[ ] ... any ... *object intended for use as a weapon*." (emphasis supplied). It seems certain that the several references to an "object intended for use as a weapon" contained in S.Rep. No. 98–225 pertain directly to the above-cited language of S. 1762. What is also clear is that this language was subsequently dropped from the form of S. 1762 enacted by the House of Representatives and the Senate on February 4, 1984.

On January 30, 1984 Senator Thurmond introduced an amendment to S. 1762 that, *inter alia,* deleted the previous language of § 1109(a) from the Bill (including the phrase "object intended for use as a weapon") and replaced it with language amending § 1791 of Title 18. That § 1791 amendment included a sub-section (a)(1)(B) that incorporated the phrase "may be used as a weapon." 130 Cong.Rec. S 397 (daily ed. Jan. 30, 1984) (amendment offered by Senator Thurmond). That language was retained in the enacted statute and became part of § 1791(a)(1)(B). The fact that the phrase "intended for use as a weapon" was dropped from the statute as enacted effectively moots any weight the legislative history relied on by appellant may have had as an indicant of the intent of Congress in establishing the § 1791(a)(2) offense.[3] Thus, we are left with the inference previously drawn from the language of § 1791(a)(2) that Congress intended the crime defined by that provision to incorporate a *mens rea* element of knowing or intentional possession, as distinguished from intent to use an object as a weapon.

### III

■ Appellant's claims that the district court erred all turn on the contention that he could properly be convicted of the crime defined in § 1791(a)(2) only if the government proved beyond a reasonable doubt that he had knowingly possessed the two and one-half inch "U"-shaped nail with the specific intent of using it as a weapon. Our analysis of the language of the statute and the relevant legislative history leads us to reject that contention. Conviction of the § 1791(a)(2) crime with which Fox was charged required only that the government prove beyond a reasonable doubt that he knowingly or intentionally possessed an object that could have been used as a weapon. Therefore, the question of whether Fox

intended to use the sharpened nail as a weapon was immaterial to the determination of his guilt or innocence of the crime charged. Thus, the district court did not err when it refused to allow appellant to offer testimony as to the use to which he intended to put the nail and declined to instruct the jury with regard to that purported intent on his part.[4]

### IV

The judgment of the district court is AFFIRMED.

---

3. We note parenthetically that the passage from S.Rep. 98–225 cited by appellant does state that conviction under the proposed § 1793 [eventually enacted, after amendment, as § 1791(a)(2) ] would be possible if "the defendant was *knowingly* making or possessing" the type of object referred to in the proposed provision.

4. Because we have determined that § 1791(a)(2) did incorporate a *mens rea* element, we need not address appellant's claim that the statute was constitutionally void for vagueness. *See Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979).