**UNITED STATES of America**

v.

**Alexander SYLVESTER.**

**No. 4:08–CR–248.**

United States District Court, M.D. Pennsylvania.

June 3, 2009.

Bill Simmers, Office of the U.S. Attorney, Williamsport, PA, for United States of America.

## MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.

This matter is before the Court on the defendant Alexander Sylvester's objection to presentence investigation report's classification of him as a career offender and his motion for a downward departure under the Sentencing Guidelines based on his conditions of confinement pending trial. For the reasons set forth below, Sylvester's objection will be overruled and his motion will be denied.

---

1. Sylvester alternatively requests a variance on this basis. The Court will address Sylvester's request for a variance and the parties' arguments regarding the factors under 18 U.S.C. § 3553(a) at the time of sentencing.

## I. BACKGROUND

The one-count indictment in this case charged Sylvester with possession of a prohibited object by an inmate in violation of 18 U.S.C. § 1791(a)(2). Specifically, the indictment charged that on January 19, 2008, Sylvester, an inmate at the Allenwood United States Penitentiary, knowingly possessed and obtained a homemade knife. After a two-day trial, the jury returned a verdict of guilty.

The Court ordered the preparation of a presentence investigation report ("PSR"). The PSR classified Sylvester as a career offender pursuant to § 4B1.1 based on his age at the time of the instant offense, his prior felony convictions for robbery and manslaughter, and the probation officer's conclusion that his instant offense is a crime of violence. Sylvester objects to his classification as a career offender, arguing that the instant offense is not a crime of violence.

Sylvester also moves for a downward departure on the ground that he was housed in disciplinary and administrative segregation at USP–Allenwood from the January 19, 2008 commission of his offense until his release from federal custody on October 27, 2008, pursuant to disciplinary sanctions imposed by the Bureau of Prisons and regulations governing the housing of prisoners pending criminal trial.[1]

## II. DISCUSSION

### A. Classification as a Career Offender

■ Section 4B1.1 of the Sentencing Guidelines provides that:

---

This Memorandum and Order addresses Sylvester's argument only as a motion for downward departure under the Sentencing Guidelines.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). It is undisputed that Sylvester fits the first and third prongs of this test for a career offender. At issue is whether Sylvester's offense of conviction, possession of a weapon by an inmate, constitutes a "crime of violence."

Section 4B1.2 states that the term crime of violence means:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The application notes to that section provide a list of offenses expressly included within the definition of crime of violence: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. *Id.* § 4B1.2, n. 1. The commentary further provides in relevant part that "[o]ther offenses are included as 'crimes of violence' if ... the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted ..., by its nature, presented a serious potential risk of physical injury to

another." *Id.* Sylvester's offense of conviction does not have as an element the use, attempted use, or threatened use of physical force against the person of another and is not among the crimes of violence enumerated in § 4B1.2 or its commentary. The question in this case is thus whether Sylvester's offense "involves conduct that presents a serious potential risk of physical injury to another."

In *United States v. Kenney*, 310 F.3d 135 (3d Cir.2002), the Third Circuit squarely addressed this question and held that the offense of possession of a weapon by an inmate under 18 U.S.C. § 1791(a)(2) is a crime of violence within the definition set forth in § 4B1.2(a)(2). The court noted that "we are satisfied that whatever an inmate's intentions his possession of a weapon in a prison inherently, and accordingly 'by its nature,' presents 'a serious potential risk of physical injury' to other persons in the prison." *Id.* at 137. In response to the defendant's argument that he did not use the weapon against anyone else and that his reason for having the weapon was potentially to injure only himself, the court stated that "Kenney's subjective reasons for having the weapon are immaterial in the context of this case" because it was required to "review this matter categorically as the Sentencing Commission was concerned with the 'nature' of the offense."

Numerous others courts of appeals have similarly held that possession of a weapon by an inmate is a crime of violence under the definition provided in § 4B1.2(a). *See, e.g., United States v. Rodriguez–Jaimes*, 481 F.3d 283, 287 (5th Cir.2007) (holding that possession of a handgun in violation of a Texas statute prohibiting the possession of a deadly weapon in a penal institution is a crime of violence under § 4B1.2(a)); *United States v. Robles–Rodriguez*, 204 Fed.Appx. 504, 507 (10th Cir.2006) (hold-

ing federal inmate's conviction for possession of a six-inch metal shank is a crime of violence under § 4B1.2(a)); *United States v. Thomas,* 183 Fed.Appx. 742, 744 (10th Cir.2006) (holding that defendant's prior federal conviction for possession of a shank is a crime of violence under § 4B1.2(a)); *United States v. Goforth,* 112 Fed.Appx. 897, 899 (4th Cir.2004) (holding that state court conviction for possessing a dangerous weapon in prison is a crime of violence under § 4B1.2(a)); *United States v. Vahovick,* 160 F.3d 395, 397 (7th Cir.1998) (holding that federal inmate's conviction for possession of an object intended to be used as a weapon is a crime of violence under § 4B1.2(a)); *United States v. Young,* 990 F.2d 469, 472 (9th Cir.) *cert. denied,* 510 U.S. 901, 114 S.Ct. 276, 126 L.Ed.2d 226 (1993) (holding that California conviction for possession of a deadly weapon in prison is a crime of violence under § 4B1.2(a)); *see also United States v. Patton,* 114 F.3d 174, 176–77 (11th Cir.1997) (holding that federal conviction for conveying a weapon in prison is a crime of violence under § 4B1.2(a)).

Sylvester argues that these decisions and the Third Circuit's holding in *Kenney* are no longer good law in light of the Supreme Court's decision in *Begay v. United States,* —— U.S. ——, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). In that case, the Court held that a New Mexico felony offense of driving under the influence is not a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which imposes a 15–year mandatory minimum sentence on an offender who has three prior convictions "for a violent felony or serious drug offense." The ACCA defines "violent felony" in relevant part as "any crime punishable by imprisonment for a term exceeding one year" that

    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

    (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e)(2)(B) (emphasis added).

In *Begay,* the Court held that DUI falls outside the scope of the emphasized "residual clause" of § 924(e)(2)(B) because "it is simply too unlike the provision's listed examples for us to believe that Congress intended the provision to cover it." *Begay,* 128 S.Ct. at 1584. The Court noted that the "listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.' " *Id.* at 1584–85. The Court stated that the examples listed in the residual clause should be read "as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 1585 (citations omitted).

The *Begay* court held that DUI was not sufficiently similar to the listed offenses because it "differs from the example crimes—burglary, arson, extortion, and crimes involving the use of explosives—in at least one pertinent, and important, respect":

    The listed crimes all typically involve purposeful, "violent," and "aggressive" conduct. That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim. Crimes committed in such a purposeful, violent, and aggressive manner are potentially more dangerous when firearms are involved. And such crimes are character-

istic of the armed career criminal, the eponym of the statute.

By way of contrast, statutes that forbid driving under the influence, such as the statute before us, typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all.... [U]nlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate. *Id.* at 1586–87 (citations omitted). The Court noted that the ACCA is focused on "the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Id.* at 1587. The Court found that while the listed examples demonstrate "an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger", DUI does not. *Id.*

In this case, Sylvester argues that the term "crime of violence" in § 4B1.2(a) must be construed identically to the term "violent felony" in § 924(e)(2)(B), and because his offense does not involve "violent and aggressive conduct" similar to the examples listed in § 924(e)(2)(B)(ii), it does not constitute a crime of violence under § 4B1.2(a).

As an initial matter, the Third Circuit has rejected Sylvester's contention that the definitions of "crime of violence" under § 4B1.2(a) and "violent felony" under § 924(e)(2)(B) must be construed identically. In *United States v. Parson*, 955 F.2d 858 (3d Cir.1992), the defendant argued that his prior state conviction for reckless

endangering was not a "violent felony" under § 924(e)(2)(B) and therefore was not a predicate "crime of violence" under § 4B1.2(a). The court disagreed, explaining that "although U.S.S.G. § 4B1.2(1) was based on 18 U.S.C. § 924(e), we conclude from the official Guidelines Commentary that the two definitions are not coextensive." [2] *Id.* at 870. The court noted that the Sentencing Commission has expressly indicated that the definitions of "violent felony" and "crime of violence" differ. *Id.* (citing U.S.S.G. § 4B1.4, n. 1). The court thus held that "a crime can be a predicate 'crime of violence' under U.S.S.G. § 4B1.2(1)(ii) ... even though it may not have been a 'violent felony' as defined in 18 U.S.C. § 924(e)(2)(B)." *Id.* at 871–72.

Particularly important for present purposes, the *Parson* court explained that, while the statutory definition of crime of violence focused solely on the "use of force", the Sentencing Commission broadened the term in § 4B1.2(a) to also include conduct presenting a "risk of physical injury." *Id.* at 866. This distinction is significant because the use of physical force is an intentional act, and therefore, a definition of "crime of violence" focused solely on the use of force requires specific intent on the part of the defendant. *Id.* By contrast, "criminals whose actions merely risk causing physical injury may have a lower mens rea of 'pure' recklessness: they may lack an intent, desire or willingness to use force or cause harm at all." *Id.* As will be discussed below, it is this issue of intent that was the focus of the Supreme Court's decision in *Begay.* The Third Circuit's decision in *Parson*, however, makes clear that even though other definitions of a career offender predicate offense may re-

---

**2.** In the version of the Guidelines Manual applied in *Parson*, the definition of crime of violence was set forth in § 4B1.2(1); however, the definition itself is substantively the same as the definition currently found in § 4B1.2(a). The section was renumbered by amendment effective November 1, 1997. *See* U.S.S.G.App. C., Amend. 568.

quire intentional or "purposeful" conduct, see *Begay*, 128 S.Ct. at 1586, the Sentencing Commission's more expansive definition of a "crime of violence" in § 4B1.2(a) encompasses lower levels of mens rea. In fact, quite presciently, and in contrast to the Supreme Court's holding in *Begay* that DUI is not a violent felony under § 924(e)(2)(B), the *Parson* court noted that a drunk driver would fall under the definition of "crime of violence" in § 4B1.2(a) because he "risks causing severe injury to others on the road or in the car", despite the fact that "in most cases he ... does not intend to use force to harm others." *Parson*, 955 F.2d at 866.

Based on the Third Circuit's holding in *Parson* that the definitions found in § 4B1.2(a) and § 924(e) are not coextensive, the Court concludes that *Kenney* remains valid, binding precedent after *Begay*. The Third Circuit's holding in *Kenney* is dispositive of Sylvester's objection to his career offender classification. Even assuming that Sylvester's current offense does not fall within § 924(e)(2)(B)'s definition of "violent felony", it is encompassed by § 4B1.2(a)'s broader definition of "crime of violence." As the *Kenney* court held, "possession of a weapon in a prison inherently, and accordingly 'by its nature,' presents 'a serious potential risk of physical injury' to other persons in the prison." 310 F.3d at 137. Sylvester argues that an inmate may possess a weapon for only self-defense or deterrence, and the weapon may never actually be used to inflict physical injury. But an inmate's "subjective reasons for having the weapon are immaterial." *Id.* Courts have uniformly recognized that the fact that the offense occurs within the close and dangerous confines and heightened security of a prison compels the conclusion that possession of a weapon by an inmate presents a serious risk of injury to others, be they guards, staff, or other inmates. *See, e.g., Robles–Rodriguez*, 204 Fed.Appx. at 507 (stating "the fact that the possession offense occurs in prison, rather than in the outside world ... creates a perpetual risk of injury and precludes any legitimate reasons that a non-incarcerated individual could have for possessing a weapon"); *Vahovick*, 160 F.3d at 397 ("Clearly, prisons are inherently dangerous places and they present unique problems. Possession of a weapon in prison, by itself, implies a violent act. Unlike the felon who may arguably have a legitimate non-violent reason for possessing a weapon outside of prison, there is simply no acceptable use for a weapon by an inmate in a prison for there always exists in such possession the 'serious potential risk of physical injury to another.' "); *Patton*, 114 F.3d at 177 ("It is not difficult to conclude that [conveying a weapon], when it occurs inside a federal prison where conditions require heightened security, carries with it a serious risk of physical injury."); *Young*, 990 F.2d at 472 ("In a prison setting, the possession by an inmate of a deadly weapon indeed presents a serious potential risk of physical injury to another. The felon who unlawfully possesses a firearm, although disobeying the law, may have a legitimate use intended for the firearm, such as target shooting or collecting. By contrast, we fail to discover a similarly 'innocent' purpose behind the possession of a deadly weapon by a prison inmate. The confines of prison preclude any recreational uses for a deadly weapon and render its possession a serious threat to the safety of others."). Sylvester's possession of a weapon in prison presents a serious potential risk of physical injury to another and therefore is a crime of violence under § 4B1.2(a).

Moreover, even if the definition of "crime of violence" under § 4B1.2(a)(2)

were limited to the definition of "violent felony" under § 924(e)(2)(B) as interpreted in *Begay*, Sylvester's offense of conviction would still be a crime of violence. The only court of appeals to address this issue post-*Begay* has come to this conclusion. *United States v. Zuniga*, 553 F.3d 1330, 1336 (10th Cir.2009) (holding Texas conviction for possession of a deadly weapon in a penal institution is a violent felony under *Begay*).

Under the required "categorical approach" to determining whether an offense is a violent felony or crime of violence, the sentencing court must first "choose the right category. And sometimes the choice is not obvious." *Chambers v. United States*, —— U.S. ——, ——, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009). In this case, it is not. The statute under which Sylvester was convicted, 18 U.S.C. § 1791(a)(2), punishes anyone who "being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object." In a separate subsection, the statute then defines numerous "prohibited objects", *id.* § 1791(d), and, in another subsection, sets forth punishments based on the nature of the object, *id.* § 1791(b). Given the broad range of prohibited objects (from currency to drugs to destructive devices) and the broad range of punishments (from a maximum of 6 months to a maximum of 20 years), the Court must treat the statute as creating separate crimes for purposes of § 924(e)(2)(B) or § 4B1.2(a). *See Chambers*, 129 S.Ct. at 690–91 (construing Illinois statute which criminalized various forms of "escape" from confinement as creating multiple offenses); *Shepard v. United States*, 544 U.S. 13, 16–17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (construing Massachusetts statute criminalizing various forms of "breaking and entering at night" as creating multiple burglary offenses). In this case, the Court finds that the "right category" is the making, possessing, obtaining, or attempting to make or obtain a weapon or an object that is designed or intended to be used as a weapon. The behavior underlying possession of a weapon or an object intended to be used as a weapon is substantially similar, but such behavior is different, in terms of the risk of physical harm, from possession of the other "prohibited objects" listed in § 1791(d). *See Chambers*, 129 S.Ct. at 691. For example, possession of currency seems less likely to involve a risk of physical harm, while possession of a destructive device seems more likely to involve such risk.

Having determined that the category of crimes at issue is making, possessing, obtaining, or attempting to make or obtain a weapon or an object that is designed or intended to be used as a weapon, the Court must determine whether these crimes "are roughly similar, in kind as well as in degree of risk posed, to the examples" listed in § 924(e)(2)(B)(ii): burglary, arson, extortion, and crimes involving the use of explosives. *Begay*, 128 S.Ct. at 1585.

First, there can be little doubt, and Sylvester does not seriously dispute, that possession of a weapon by an inmate presents a risk of physical injury to another similar to that presented by the listed offenses. "[P]ossession of a weapon in a prison inherently ... presents a serious potential risk of physical injury." *Kenney*, 310 F.3d at 137. This risk is similar to the risk presented by the listed offenses. For example, "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203, 127 S.Ct. 1586. Similarly, the main risk of possession of a weapon by an inmate arises

not from the simple physical act of wrongfully possessing the weapon, but from the possibility of a face-to-face confrontation between the possessor of the weapon and a third party—whether another inmate, a corrections officer, or another bystander—who is incarcerated in, works at, or visits the prison. In fact, because "there is simply no acceptable use for a weapon by an inmate in a prison," *Vahovick*, 160 F.3d at 397, and the sole reason for an inmate's possessing a weapon is the ability to physically injury another—whether offensively, defensively, or otherwise—weapon possession in prison presents a far greater risk of physical injury than does burglary. Sylvester's offense of conviction presents the requisite risk of physical injury to constitute a violent felony or crime of violence.

Next, the Court must determine whether possession of a weapon by an inmate is similar in kind to the example offenses listed in § 924(e)(2)(B)(ii). In *Begay*, the Supreme Court held that DUI was not similar in kind to the listed offenses because unlike those examples which "typically involve purposeful, violent, and aggressive conduct", DUI is "a crime of negligence or recklessness," a strict liability offense, "criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id.* at 1586–87. This distinction is important because the purpose of the ACCA is to increase sentences when an offender with a history of violent crime possesses a gun.[3] *Id.* at 1587. The enumerated offenses in-

volve conduct that makes it "more likely that an offender later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 1586. But drunk driving does not involve "intentional or purposeful conduct ... [that] show[s] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* at 1587.

In the short time since *Begay* was handed down, courts have noted the difficulty of applying the test of in-kind similarity contained in the Supreme Court's decision. *See, e.g., United States v. Herrick*, 545 F.3d 53, 58 (1st Cir.2008) ("The application of *Begay* to this case is not as simple as placing a square peg in a square hole. Not only was the *Begay* opinion tailored to the crime at hand, ... but it was also a close decision. Moreover, the Court used language subject to varying interpretations in its new test."); *see also Begay*, 128 S.Ct. at 1589 (Scalia, J. concurring) (describing the majority's position as "leaving our brethren on the district courts and courts of appeals much room for enjoyable speculation"). The adjectives chosen by the Court to describe the listed offenses—purposeful, violent, and aggressive—"denote qualities that are ineluctably manifested in degree and appear in different combinations; they are, therefore, imprecise aids." *United States v. Williams*, 529 F.3d 1, 7 (1st Cir.2008).

Nonetheless, the focus of the Court's inquiry is fairly clear. "The primary distinction the Supreme Court relied upon to

---

**3.** The *Begay* court's focus on the purpose of the ACCA further suggests that the reasoning of that case is not applicable here. Although the Sentencing Commission borrowed from the ACCA in defining "crime of violence," §§ 4B1.1 and 4B1.2 implement the statutory directives contained in the Comprehensive Crime Control Act of 1984, 28 U.S.C. § 994(d) and (h), not the ACCA. *See Parson*, 955 F.2d at 863–65. The purposes of these two statutes, while similar, are not the same.

The ACCA is directed at the "special danger" of gun possession by career criminals. *Begay*, 128 S.Ct. at 1587. Section 994(h) more broadly deals with recidivist violent and drug offenders, *Parson*, 955 F.2d at 863–64, regardless of whether guns are involved. The holding in *Begay*, which turns on the ACCA's focus on gun possession, is not necessarily applicable to the broader purpose behind § 994(h), which is implemented in §§ 4B1.1 and 4B1.2.

distinguish drunk driving from the enumerated crimes in § 924(e)(2)(B)(ii) [was] the strict liability nature of DUI." *United States v. Spells,* 537 F.3d 743, 752 (7th Cir.2008). The Court did not define "violent" or "aggressive" or "explain in other than conclusory terms why a DUI was not violent or aggressive." *Herrick,* 545 F.3d at 58. Rather, the Court held that DUI was not similar in kind to the example offenses because a drunk driver "need not have had any criminal intent at all." *Begay,* 128 S.Ct. at 1586–87. Thus, *"Begay* places a strong emphasis on intentional-purposeful-conduct as a prerequisite for a crime to be considered similar in kind to the listed crimes. The Court was concerned that, without this requirement, the statute would apply to a large number of crimes which pose a great degree of risk to others but are far removed from the deliberate kind of behavior associated with violent criminal use of firearms." *United States v. Gray,* 535 F.3d 128, 131–32 (2d Cir.2008). While the Supreme Court's use of the conjunctive suggests that all three characteristics—purposeful, violent, and aggressive—are necessary for an offense to be considered a "violent felony" or "crime of violence," *see Herrick,* 545 F.3d at 58; *United States v. Williams,* 537 F.3d 969, 975 (8th Cir.2008), these terms must be applied in light of the Court's focus on intent and the connection between intent and the underlying purpose of the ACCA.

In this case, Sylvester's crime is "purposeful." A conviction under § 1791(a)(2) requires the inmate to have knowingly or intentionally possessed the weapon.[4] *See United States v. Gonzalez,* 244 Fed.Appx. 316, 318 (11th Cir.2007); *United States v. Kenney,* No. 4:99–CR–280, 2005 WL

1216220, at *3–4 (M.D.Pa. May 5, 2005); *cf. United States v. Fox,* 845 F.2d 152, 154–56 (7th Cir.1988), *cert. denied,* 488 U.S. 1012, 109 S.Ct. 800, 102 L.Ed.2d 791 (1989), and *United States v. Perceval,* 803 F.2d 601, 602–03 (10th Cir.1986) (construing the pre–1986 version of § 1791). Unlike the strict liability offense of DUI, Sylvester's offense involved deliberate conduct. This intentional conduct is "relevant to the question whether he is a career criminal." *Begay,* 128 S.Ct. at 1587. An inmate, currently incarcerated on one offense, who deliberately chooses to commit another is more likely to be among the "career criminals" with which the ACCA is concerned. The deliberate conduct involved in possessing a weapon in prison is also relevant "to the kind or degree of danger the offender would pose were he to possess a gun," the "special danger" upon which the ACCA focuses. *Id.* That possession occurs in prison, where the only possible purposes for the weapon are to inflict injury upon another or threaten to do so, shows that the offender would be a greater danger if he were to possess a gun and "is the kind of person who might deliberately point the gun and pull the trigger," *id. See Zuniga,* 553 F.3d at 1335 (noting "the offender's awareness of the likelihood of violence indicated a willingness to use violence if necessary"). The primary concern of *Begay's* test of in-kind similarity—whether the offense involves deliberate or intentional conduct—is easily satisfied in this case.

Sylvester's offense of conviction is also "violent." "Possession of a weapon in prison, by itself, implies a violent act." *Vahovick,* 160 F.3d at 397. "The only reason

4. Because the Court has determined that possession of an object intended to be used as a weapon is part of the same "category" as possession of a weapon for the purposes of § 924(e)(2) or § 4B1.2(a), we note that the

former offense requires the specific intent to use the object as a weapon. *See United States v. Allen,* 190 F.3d 1208, 1209 (11th Cir.1999); *United States v. Rodriguez,* 45 F.3d 302, 305–06 (9th Cir.1995).

to carry such a weapon is to use it to attack another or to deter an attack." *Zuniga*, 553 F.3d at 1335 (quoting *United States v. Romero*, 122 F.3d 1334, 1343 (10th Cir.1997)). If the weapon is possessed for offensive purposes, the now-armed inmate is much more likely to engage in such violent behavior. If the inmate possesses the weapon for defensive purposes, he has substantially increased the likelihood of violence associated with the anticipated attack. Like the offenses listed in § 924(e)(2)(B)(ii), both of these scenarios "create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves." *United States v. Thornton*, 554 F.3d 443, 449 (4th Cir.2009). An inmate in possession of a weapon increases violence in prison by making himself more threatening and turning other inmates and institutional staff into likely targets. *Cf.* Oxford English Dictionary (2d ed.1989) (defining "violent" in part as "Of things: Having some quality or qualities in such a degree as to produce a very marked or powerful effect (esp. in the way of injury or discomfort)").

Relying on a dictionary definition of violent as "marked by extreme force or sudden intense activity" which was cited by the First Circuit in *Herrick*, Sylvester argues that possession is too passive to be considered violent. *See Herrick*, 545 F.3d at 58. While a crime that involves "extreme force or sudden intense activity" would almost assuredly be considered violent, the nature of the crimes enumerated in § 924(e)(2)(B)(ii) demonstrates that the

meaning of "violent" for purposes of the ACCA is not so limited. *See Williams*, 529 F.3d at 7 n. 7 (noting that "even the crimes enumerated by Congress in the ACCA and treated as examples satisfy these requirements only in some measure"). For example, the Tenth Circuit noted in *Zuniga* that:

> the Supreme Court identified the violent aspect of a burglary as the possible confrontation between the burglar and the occupant or someone else investigating. A burglar's entry need not be violent, for it creates the possibility of violence should the burglar confront an occupant, officer, or bystander.... Similarly, possession of a deadly weapon in a penal institution creates the possibility—even the likelihood—of a future violent confrontation.

*Zuniga*, 553 F.3d at 1330 (quoting *United States v. West*, 550 F.3d 952, 969 (10th Cir.2008); internal punctuation omitted). As another example, the Hobbs Act defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); *see United States v. Anderson*, 989 F.2d 310, 312–13 (9th Cir. 1993) (holding the definition of "extortion," for purposes of the ACCA is the Hobbs Act's definition of that term).[5] Thus, "much extortion involves blackmail or trolling for bribes rather than any threat, let alone actuality, of violence—yet all extortion is classified as a 'crime of vi-

---

**5.** In *United States v. DeLuca*, 17 F.3d 6, 9 (1st Cir.1994), the First Circuit disagreed with the adoption of the Hobbs Act definition of extortion and instead opted for a definition from the Model Penal Code for purposes of § 4B1.2(a). The Model Penal Code defines extortion as obtaining the property of another by making any of a number of threats. *See* Model Penal Code § 223.4 (1980). In his

dissent in *James*, Justice Scalia rejected the Model Penal Code definition and defined "extortion" for purposes of the ACCA as "the obtaining of something of value from another, with his consent, induced by the wrongful use or threatened use of force against the person or property of another." *James*, 550 U.S. at 220–24, 127 S.Ct. 1586 (Scalia J. dissenting).

olence,'" *United States v. Shannon*, 110 F.3d 382, 389 (7th Cir.1997), and was characterized in *Begay* as typically involving violent conduct, *Begay*, 128 S.Ct. at 1586. Similarly, possession of a weapon by an inmate may only involve threats or the deterrent value of the weapon, but still constitute "violent" conduct for purposes of the ACCA.

Sylvester also suggests that an inmate might possess a weapon for any number of reasons that do not indicate a willingness to use violence, such as being forced by another inmate to hide the weapon or having the weapon planted among his possessions by an enemy. However, the *Begay* test examines the conduct "typically" involved in the commission of an offense. *Begay*, 128 S.Ct. at 1586; *see also James*, 550 U.S. at 208, 127 S.Ct. 1586 (stating "the proper inquiry is whether the conduct encompassed by the elements, in the ordinary case, presents a serious potential risk of injury to another"). An inmate typically possesses a weapon in order to violently attack another or violently respond to another's attack. *See Zuniga*, 553 F.3d at 1330. In either case, the offense is typically violent.

Finally, Sylvester's crime is also "aggressive." An inmate's possession of a weapon is a direct affront to the authority of prison staff, which jeopardizes the order and safety of the institution, and provokes hostility with other inmates.[6] Again relying on a dictionary definition cited in *Herrick*, Sylvester argues that possession of a weapon by an inmate is not aggressive because "it does not necessarily" involve "a forceful action or procedure" or the intent "to dominate or master." *Herrick*, 545 F.3d at 58. Again, however, this narrow

definition is at odds with the offenses listed in § 924(e)(2)(B)(ii) which the *Begay* court characterized as aggressive, such as a burglar's entry into a dwelling. Moreover, the same dictionary cited in *Herrick* also defines "aggressive" as "marked by combative readiness." Merriam–Webster's Collegiate Dictionary (11th ed.2003). Similarly, the Oxford English Dictionary (2d ed.1989) defines "aggressive" in part as "disposed to attack others." These definitions of "aggressive" are consistent with the purpose of the ACCA: determining whether "the offender is the kind of person who might deliberately point the gun and pull the trigger." *Begay*, 128 S.Ct. at 1587. Indeed, an offender who is marked by a readiness to engage in combat or disposed to attack another is precisely the type of offender who, later possessing a gun, is more likely to "use that gun deliberately to harm a victim." *Id.* at 1586. Possession of a weapon by an inmate falls squarely within these definitions of "aggressive." By the very nature of his offense, an inmate who possesses a weapon has rendered himself combat ready, and this is the only possible purpose for possessing a weapon in prison. An inmate in possession of a weapon also demonstrates his disposition toward violence. "When a prisoner carries a deadly weapon, that behavior indicates a readiness to enter into conflict, which in turn creates a danger for those surrounding the armed prisoner. For that reason, possessing a deadly weapon in prison is aggressive conduct." *Zuniga*, 553 F.3d at 1336.

For the foregoing reasons, the Court concludes that possession of a weapon by an inmate involves purposeful, violent, and aggressive conduct. That offense is simi-

---

**6.** As the *Zuniga* court recognized, the prison setting distinguishes the offense of possession of a weapon by an inmate from the offense of carrying a concealed weapon, to which Sylvester attempts to analogize his crime. *See*

*Zuniga*, 553 F.3d at 1334 n. 2 (distinguishing *United States v. Archer*, 531 F.3d 1347 (11th Cir.2008)); *see also Robles–Rodriguez*, 204 Fed.Appx. at 507; *Vahovick*, 160 F.3d at 397; *Young*, 990 F.2d at 472.

lar in kind and degree of risk to the offenses listed in § 924(e)(2)(B)(ii), and therefore, is properly considered a violent felony under that provision and a crime of violence under § 4B1.1. Sylvester's objection to his classification as a career offender will therefore be overruled.

### B. Motion for Downward Departure

■ Sylvester moves for a downward departure pursuant to U.S.S.G. § 5K2.0(a)(2) on the ground that as a consequence of his offense, he served the final nine-and-a-half months of his prior sentence in disciplinary segregation and administrative detention, where he spent roughly 23 hours per day in his cell, was not permitted to work, and had limited non-legal reading material, no opportunity to participate in educational programs, and no commissary privileges.

Section 5K2.0 provides in relevant part that "[a] departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2)(B). The Third Circuit has held, however, that prison disciplinary sanctions are not a proper basis for a downward departure. In *United States v. Newby*, 11 F.3d 1143 (3d Cir.1993), the court rejected the defendants contention that their loss of good time credits was grounds for a downward departure. The court stated that this circumstance was not a mitigating one because it did not reduce the defendants' guilt or culpability. *Id.* at 1148. The court also stated that "[b]ecause of the different purposes that the disciplinary sanctions and criminal sentences are designed to serve, we think that granting a downward departure to compensate for the defendants' loss of good time credits would defeat the very goals of our criminal justice system."

Sylvester argues that *Newby* has been overruled. The very case cited by him for this proposition, however, explains that *Newby* was overruled only as to its "pronouncement on moral culpability" and that subsequent decisions "did not ... disturb *Newby's* holding that the loss of good time credits did not merit downward departure." *United States v. Evans*, 49 F.3d 109, 113 & n. 2 (3d Cir.1995). Instead, later cases have "construe[d] *Newby* as focusing primarily on the fact that because criminal sentences and disciplinary sanctions are designed to serve different purposes, a departure would defeat the goals of the criminal justice system by giving incarcerated defendants lesser sentences than they deserved." *Id.* (quoting *United States v. Monaco*, 23 F.3d 793, 803 n. 16 (3d Cir.1994)). The disciplinary sanctions imposed on Sylvester by the Bureau of Prisons are thus not grounds for a downward departure.

Sylvester argues alternatively that the Court may still depart based, not on the 30 days of disciplinary segregation and loss of good time imposed as disciplinary sanctions, but on the additional time he spent housed in the "punitive conditions" of administrative segregation as a result of his pending trial. (Doc. 64 at 9.) The Third Circuit has quite recently addressed the availability of downward departures based on conditions of confinement:

> We take note that several district courts (although only in non-published opinions) have determined that extraordinary conditions of confinement potentially warrant a downward departure, even though pretrial confinement is not a factor listed in the Sentencing Guidelines. The Supreme Court recognized in *Koon v. United States* that factors not mentioned in the Guidelines can serve as a basis for a downward departure, but these departures will be "highly infrequent." 518 U.S. 81, 93–96, 116

S.Ct. 2035, 135 L.Ed.2d 392 (1996). A departure based on the unusual and deplorable conditions of the defendant's pretrial detainment is "highly infrequent." *Pelaez [v. United States,* No. 08–0600, 2008 WL 4004573, at *4 (D.N.J. Aug. 25, 2008)] cited several district court decisions from our Circuit to demonstrate the infrequency of the departure, including the highly unusual circumstances endured by those defendants who have received a departure (e.g., being subject to physical or sexual abuse while in prison), and the circumstances in which defendants were not granted a departure (e.g., a defendant spent one year in a deplorable Columbian prison, which was overcrowded, had no running water, and an infestation of rodents). *United States v. Austin,* 309 Fed.Appx. 573, 577 n. 7 (3d Cir.2009) (some citations omitted); *see also United States v. Stevens,* 223 F.3d 239, 248 n. 9 (3d Cir.2000) (assuming *arguendo* that conditions of confinement are a permissible basis for downward departure, but noting the "contention among the district courts of this Circuit over the propriety and wisdom of considering the conditions of confinement as a basis for downward departures").

Assuming for the sake of argument that Sylvester is correct that the Court retains discretion to depart downward based on his conditions of confinement, this is not one of the "highly infrequent" cases presenting "extraordinary conditions of confinement" or "highly unusual circumstances" that would warrant the exercise of such discretion. Sylvester's motion for a downward departure will therefore be denied.

## III. CONCLUSION

For the foregoing reasons, Sylvester's objection to his classification as a career offender will be overruled, and his motion for a downward departure under § 5K2.0 will be denied. As a result of these rulings, Sylvester's guidelines imprisonment range remains 51 to 60 months.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's objection to his classification as a career offender is OVERRULED; and

2. Defendant's motion for a downward departure based on his conditions of confinement is DENIED.