# United States Court of Appeals
## For the First Circuit

No. 05-1789

UNITED STATES OF AMERICA,

Appellee,

v.

TREVOR ROYCE TEAGUE,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

_____

Before

Torruella and Lynch, Circuit Judges,
and Woodcock,* District Judge.

_____

Arza Feldman and Steven A. Feldman, on brief, for appellant.
Timothy Q. Feeley, Assistant United States Attorney, and
Michael J. Sullivan, United States Attorney, on brief, for
appellee.

_____

November 29, 2006

_____

_____

*Of the District of Maine, sitting by designation.

**WOODCOCK, <u>District Judge</u>.**   This appeal raises the question of whether a prior conviction for endangerment of a child under Texas law necessarily constitutes a predicate crime of violence for purposes of career offender status.   Although in the circumstances of this case the district judge erred in answering this question in the affirmative, we conclude that the error was harmless and uphold the sentence.   We further conclude that the Appellant did not suffer a due process violation  and uphold the conviction.

## I.   Statement of Facts

On September 5, 1996, Trevor Royce Teague, then 19 years old, turned up the stereo, left his eleven-month-old daughter alone in her crib, and rode off on his motorcycle to Fort Hood to look for his wife.   During the forty-five minutes he was gone, the apartment manager, responding to a complaint about loud music, used her passkey to enter the apartment to find the baby crying in the crib.   Mounted on the wall about five feet from the child was a gun rack with a collection of weapons, two of which were loaded.   She called the police.   When Teague returned home, he found the police there, seeking an explanation for his conduct.   They did not accept his excuse that he could not carry his baby on his motorcycle and he was charged with endangering a child.   On November 14, 1996, he entered a plea of guilty, but adjudication was deferred eight years and he was placed on probation.   Teague had trouble with compliance.   He made an unsupervised visit to his daughter, failed

to pay his fine, was charged with criminal mischief,[1] and operated a vehicle after license suspension.  On December 23, 1997, upon motion by the government, an adjudication of guilt was entered.

The scene shifts to I-44 in St. Louis County, Missouri. On October 23, 2003, Christopher Sugar and Sean Stark were traveling cross country in a 39-foot recreational vehicle when they encountered the Sugar Tree Road checkpoint, a ruse designed to intercept illegal drugs.[2]  Law enforcement officials erected a sign which alerted motorists to a supposed police stop, complete with drug-sniffing canines, past the next exit.  Motorists taking the immediate Sugar Tree Road exit were tailed and pulled over for any motor vehicle violations.  Once stopped, if the occupants refused to consent to a search, the vehicle was held until a drug-sniffing dog arrived.

Sugar and Stark fell for the ruse and took the exit. After their RV swayed across the "fog line" on a two-lane road, they were stopped under a provision of Missouri law that requires

_____

[1]Prosecution was barred on the criminal mischief charge.

[2]This is not the only time this exit has been used in this fashion.  The Eighth Circuit described the Sugar Tree Road exit as the "so-called 'ruse checkpoint.'"  United States v. Yousif, 308 F.3d 820, 823 (8th Cir. 2002).  Yousif explains that the police chose the site because they believed "that I-44 was a commonly used route for transporting drugs, there was little use of the Sugar Tree Road exit for commercial or local traffic, and the end of the ramp was not visible from the highway."  Id.; see also United States v. Martinez, 358 F.3d 1005, 1006 (8th Cir. 2004); United States v. Williams, 359 F.3d 1019, 1020 (8th Cir. 2004) ("There are no services -- fuel, lodging, or food facilities -- accessible from the Sugar Tree exit, so those who exit I-44 at Sugar Tree after seeing the warning signs may be seeking to avoid detection because they are carrying illegal substances.").

a vehicle to stay in the single lane on three or more marked lanes for traffic. The police found 27 bales of marijuana stowed away in the closet of their RV. Sugar and Stark agreed to cooperate and they continued on their way to the back parking lot of a Holiday Inn in Marlboro, Massachusetts. At 3:30 p.m. on October 24, 2003, a white Lexus pulled up near the RV and three men emerged: Anibal Torres, Fabian Ruiz, and Trevor Royce Teague. They were each arrested while transferring the bales of marijuana from the RV to the Lexus.

On October 25, 2003, a criminal complaint was filed charging Teague, Torres, Ruiz, Sugar, and Stark with conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana. On December 3, 2003, all five defendants were named in a three-count indictment, which was superseded on October 13, 2004. Sugar and Stark discontinued their cooperation and filed a motion to suppress the marijuana, claiming the stop violated the Fourth Amendment. Sugar and Stark based their motion on the grounds that the swaying of their RV over the fog line fell outside the scope of the Missouri traffic statute and that the police officers did not then have a reasonable suspicion to detain them until the canine arrived. After a two-day evidentiary hearing, the district court granted their motion in a written memorandum and order. United States v. Sugar, 322 F. Supp. 2d 85 (D. Mass. 2004). Teague soon followed suit and filed his own motion to suppress, claiming a violation of his due process rights. The district court orally denied Teague's suppression motion. On

-4-

February 3, 2005, after a four-day jury trial, Teague was convicted of both counts of the superseding indictment.[3]

When Teague came for sentencing on May 12, 2005, the full weight of his ill-advised motorcycle ride in 1996 -- and the resulting conviction for child endangerment in 1997 -- became apparent. By operation of the career offender provisions, Teague faced a sentencing range of 262 to 327 months; without career offender status, he would have faced a sentencing range of 78 to 97 months.[4] Over Teague's objection, the district court found, as a matter of law, that the 1997 conviction was a crime of violence and, coupled with a previous conviction of a crime of violence,[5] Teague was deemed a career offender under U.S.S.G. § 4B1.1(a). Despite his conclusion, the sentencing judge, after applying the statutory factors in 18 U.S.C. § 3553(a), sentenced him to 96 months incarceration, far below the career offender range, but within the range that would otherwise have applied.

---

[3]Specifically, he was convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 and conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846.

[4]The career offender calculation was based on a total offense level of 34 and a criminal history category of VI; the calculation without career offender status would have been based on a total offense level of 26 and a criminal history category of III.

[5]Teague was convicted in Texas state court on September 4, 1996 of injury to a child. He does not contest the conclusion that this conviction is properly a predicate under U.S.S.G. § 4B1.1(a).

# II. Discussion

## A. Child Endangerment as a Crime of Violence

It is a congressional directive that a defendant who has been convicted of two or more felonies that are either crimes of violence or Controlled Substance Act offenses receive "a sentence to a term of imprisonment at or near the maximum term authorized." 28 U.S.C. § 994(h). To implement this directive, the United States Sentencing Commission established a substantially enhanced penalty for "career offenders" and adopted the following definition of "crime of violence:"

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(1)-(2).

Here, the sentencing court was required to determine whether Teague's prior conviction for the Texas crime of child endangerment fit within the guideline definition of crime of violence. The Texas statute provides in part: "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." Tex. Penal Code Ann. § 22.041(c). The sentencing judge concluded that "the Texas

-6-

statute involved here categorically ... is a crime of violence."
Reviewing the district court's interpretation of the sentencing
guidelines de novo, United States v. Meada, 408 F.3d 14, 24 (1st
Cir. 2005), we disagree.

To determine whether or not a certain offense is a
violent felony under the Armed Career Criminal Act (ACCA), this
court employs a categorical approach. See United States v.
Richards, 456 F.3d 260, 262-63 (1st Cir. 2006) (citing United
States v. Taylor, 495 U.S. 575, 600 (1990)). That approach entails
two steps. Under the first step, we ask if the prior conviction
was based on a statute that necessarily entails every element of a
violent felony. If the answer is yes, our inquiry ends, and the
prior conviction can be used as an ACCA predicate. See Taylor, 495
U.S. at 602; Richards, 456 F.3d at 263. If the answer is no, and
the underlying statute proscribes both violent and non-violent
felonies, we proceed to the second step of the analysis. In this
step, we look at the specific circumstances of the defendant's
underlying prior conviction to determine if that conviction was
actually for a violent felony. See Taylor, 495 U.S. at 602. Thus,
"the jury must have been required to find (or, in a guilty plea
context, the defendant necessarily must have admitted) all the
elements of a violent felony." Richards, 456 U.S. at 263. At the
second step, the court will generally be able to look only at a
very limited class of judicial documents in the record to establish
the specific circumstances of the defendant's prior conviction.
See Shepard v. United States, 544 U.S. 13, 26 (2005).

Under the first step of the analysis, we conclude that the Texas crime of child endangerment is not categorically a "crime of violence" for ACCA purposes. The guideline definition of "crime of violence" is more narrowly drawn than the statutory definition of child endangerment. The federal guidelines require "the use, attempted use, or threatened use of physical force" or the "serious potential risk of physical injury," whereas the state statute captures more innocuous conduct, such as negligent omissions that place a child "in imminent danger ... of mental impairment." Placing a child in danger of mental impairment, though not laudable, does not necessarily involve the use or threatened use of physical force or the serious potential risk of physical injury.

We thus proceed to the second step of the analysis. The government did not provide any evidence at the sentencing hearing, within the limitations imposed by Shepard, establishing that the conduct which formed the basis for Teague's Texas conviction met the federal definition of a crime of violence.[6] Without more, the government failed to meet its burden of demonstrating the applicability of the sentencing enhancement under the ACCA, as Teague's conviction may well have been based on the part of the statute not within the ACCA's reach. To simply assume that Teague

---

[6]The only Shepard evidence that the government placed before the sentencing court was the conviction itself. The government's proffer was silent about any conduct that Teague committed that would have fit his actions within the definition of a crime of violence. While Teague himself introduced the Texas indictment, the defendant's representation at the sentencing hearing -- unchallenged by the government -- was that this document gave no details beyond the mere fact that the child was left unattended.

had been convicted for violent conduct would be to engage in an analysis proscribed by Taylor and Shepard.[7]

This does not end our task. Although the sentencing judge concluded that Teague was a career offender, he sentenced him within the range that would have applied if he were not. Despite this favorable result, Teague argues that, because the sentencing judge imposed a 96 month sentence –- the high end of the 78 to 97 month non-career offender sentencing range –- the district judge must have been unduly influenced by his earlier conclusion that he was a career offender.

Teague's argument is not supported by the record. To the contrary, the district judge carefully explained the reasons for the sentence. Having taken into account the career offender guideline sentencing range of 262 to 327 months, the district judge performed a statutory analysis under 18 U.S.C. § 3553(a) in accordance with United States v. Booker, 543 U.S. 220 (2005), and United States v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006). In doing so, the district judge made it clear that he viewed the career offender range as overly punitive in the circumstances of

---

[7]The parties focus primarily on two cases: United States v. Calderon-Pena, 383 F.3d 254 (5th Cir. 2004) and United States v. Parson, 955 F.2d 858 (3d Cir. 1992). In Calderon-Pena, the Fifth Circuit en banc concluded that a conviction for violating the same Texas statute did not constitute a crime of violence under U.S.S.G. § 2L1.2. Id. at 256-61. Section 2L1.2, however, has a narrower definition of crime of violence than § 4B1.2, and the Fifth Circuit relied in part on this difference in language to arrive at its conclusion. Id. Parson dealt with a conviction for reckless endangerment under Delaware law, which was defined as "recklessly engaging in conduct which creates a substantial risk of death to another person." Parson, 955 F.2d at 867. Calderon-Pena and Parson have limited applicability here.

the case, stating: "I think the effect of this career offender business is an undue or excessive enhancement of the actual culpability of your criminal history." The district court then explained how he had arrived at the 96 month sentence. He commented that the crime was "big-time drug trafficking," that Teague was not "any sort of bit player," and that Teague had a "real record," and that he had considered what "actually is behind those prior convictions."

These comments reflect appropriate statutory considerations, including "the nature and circumstances of the offense" and "the history and characteristics of the defendant," which lie at the heart of the statutory analysis contemplated by Booker and Jimenez-Beltre. See 18 U.S.C. § 3553(a)(1). The rationale articulated by the district court amply justifies a sentence of 96 months and, even though the district court erred in concluding that Teague was a career offender, there is nothing to suggest that a different sentence would issue if we remanded the matter. See Williams v. United States, 503 U.S. 193, 203 (1992) ("Once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed."); United States v. Roselli, 366 F.3d 58, 65 (1st Cir. 2004). Based on this record, we readily conclude the error on the part of the district court was harmless.

-10-

**B. Due Process Claim**

Teague also claims that because the search of Sugar and Stark's RV was deemed unconstitutional as applied to them, it should also be unconstitutional as applied to him. As this issue is a question of law, we review the district court's conclusions de novo. United States v. Luna, 436 F.3d 312, 316 (1st Cir. 2006). Teague carefully tailors his claim, conceding that he has no standing to challenge the search of Sugar and Stark's RV on Fourth Amendment grounds.[8] Instead, he asserts that his due process rights were violated by the government's use at trial of previously suppressed drugs. Nevertheless, Teague's claim is untenable, as he fails to meet the high standards for a violation of due process.

In United States v. Payner, 447 U.S. 727 (1980), the Supreme Court questioned whether a defendant could properly assert a violation of the rights of a third party under the Due Process Clause. In Payner, the government discovered incriminating evidence by exploiting a "flagrantly illegal search" of a third party's briefcase. Id. at 729. Payner concluded that the defendant did not have standing to assert a Fourth Amendment violation. Id. at 731-32. As here, the defendant in Payner also raised a due process claim. The Court responded:

> The same difficulty attends respondent's claim to the protections of the Due Process Clause of the Fifth Amendment. The Court of Appeals expressly declined to

---

[8]In United States v. Cordero, we stated ". . . a defendant cannot succeed in suppressing evidence on Fourth Amendment grounds unless he can show that his own rights, rather than a third party's, have been abridged." 42 F.3d 697, 699 n.2 (1st Cir. 1994).

-11-

> consider the Due Process Clause.  But even if we assume
> that the unlawful briefcase search was so outrageous as
> to offend fundamental "canons of decency and fairness,"
> the fact remains that "[the] limitations of the Due
> Process Clause ... come into play only when the
> Government activity in question violates some protected
> right of the <u>defendant</u>."

<u>Id</u>. at 737 n.9 (citations omitted) (emphasis in original).

In <u>United States</u> v. <u>Santana</u>, we contemplated whether <u>Payner</u> established "a limitation on standing in the strict sense of the word, or merely signaled that defendants are highly unlikely to prevail when they seek to vindicate the rights of third parties." 6 F.3d 1, 9 (1st Cir. 1993).  We concluded that "[i]n either event, <u>Payner</u> makes manifest that, here, the trial court lacked authority under the due process clause to dismiss a charge on the basis that government misconduct caused conscience-shocking harm to non-defendants."  <u>Id</u>.; <u>Cordero</u>, 42 F.3d at 699 n.2 (citing <u>Santana</u> as "suggesting that a due process defense based on outrageous government misconduct is not available if the misconduct only harmed third parties, but not the defendant").  Here, we arrive at the same conclusion.

There is simply no evidence that the police conduct was so outrageous as to violate the "canons of decency and fairness" to implicate the Due Process Clause.  <u>Payner</u>, 447 U.S. at 737 n.9 (citations omitted); <u>Santana</u>, 6 F.3d at 4 ("The banner of outrageous misconduct is often raised but seldom saluted.").  In fact, in denying Teague's motion to suppress, the district court expressly found that nothing "that happened here was egregious" and

-12-

the police were not acting in "bad faith."[9]  The district court correctly concluded that, even if the police had erred in stopping and searching the RV, their conduct did not rise to the level of a due process violation.  Teague's claim of error, therefore, fails and his motion to suppress was properly denied.

## II.  Conclusion

The district court's conviction and sentence are affirmed.

---

[9]Judge Saris presided over, and orally denied, Teague's motion to suppress.  Her comments concerning police conduct were consistent with her written decision involving Sugar and Stark. Sugar, 322 F. Supp. 2d at 91-94.