# United States Court of Appeals
## For the First Circuit

No. 15-1262

UNITED STATES OF AMERICA,

Appellee,

v.

CHARLES REED, III,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta and Barron, Circuit Judges.

James S. Hewes on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, and
Thomas E. Delahanty II, United States Attorney, on brief for
appellee.

July 18, 2016

**KAYATTA, <u>Circuit Judge</u>**. After pleading guilty to a robbery in which he brandished a firearm, Charles Reed, III ("Reed"), received a 192-month prison sentence. Reed now appeals this sentence, arguing that the district court erred in concluding that his prior convictions subjected him to a 15-year mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and also triggered a career offender sentencing enhancement under the United States Sentencing Guidelines ("the Guidelines"). Because the district court properly applied the career offender enhancement, and because Reed has shown no plain error in the district court's conclusion that the ACCA applied, we affirm.

## I.  Background[1]

On December 2, 2013, Reed and his roommates, Ryan Forrest ("Forrest") and Walter Heathcote ("Heathcote"), decided to commit a robbery. The trio first discussed and discarded the idea of robbing a gas station. They then visited a Walmart store with the unrealized aim of stealing a television. Reed, high on heroin, next suggested that they rob a Family Dollar store in Biddeford, Maine. After Heathcote drove the trio to the store, Reed--who was armed with a hunting rifle--went into the store with Forrest. The

---

[1] Because Reed pled guilty, we draw the relevant facts from the sentencing hearing and the unchallenged portions of the Presentence Investigation Report. <u>See</u> <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 45 (1st Cir. 2010).

two approached the cashier and demanded money. Recognizing Reed as a regular customer, the cashier initially thought the robbery was a joke, but Reed disabused the cashier of that impression by asking him if he wanted to find out whether Reed's rifle was real.

The cashier told Reed and Forrest that he could not open the store's safe without the store manager. Forrest found the manager and the manager's pregnant fiancée in a nearby aisle and brought them to the cashier. The manager input his code into the safe, but he informed Reed and Forrest that the safe would not open for two minutes due to a security feature. Becoming anxious, Reed and Forrest left without waiting for the safe to open, pausing only long enough to take the store's cordless phone, the cell phone of a bystander, and multiple cartons of cigarettes, as well as $600 from the open cash register.

Not surprisingly, police shortly thereafter arrested Reed. He pled guilty to a federal information[2] charging him with one count each of robbery, 18 U.S.C. § 1951(a); brandishing of a firearm during and in relation to a crime of violence, id. § 924(c)(1)(A)(ii); and possession of a firearm by a felon subject to the ACCA's mandatory minimum sentence ("the ACCA count"), id. §§ 922(g)(1), 924(e). A Presentence Investigation Report ("PSR")

---

[2] Reed was initially prosecuted by state authorities, but defense counsel represented that Maine has since dismissed its charges in light of the federal prosecution.

prepared by the probation office grouped the robbery count together with the ACCA count, see U.S.S.G. § 3D1.2(c), and assigned the grouped counts a base offense level of 24.[3] That base offense level was overridden, however, by the probation office's determination that Reed's prior convictions rendered him subject to the Guidelines' so-called career offender enhancement. See id. § 4B1.1. As a result of the enhancement, Reed's base offense level was set at 37, and his Criminal History Category was set at VI. See id. § 4B1.1(b). The PSR then granted Reed a three-level reduction for his acceptance of responsibility, see id. §§ 3E1.1(a)-(b), 4B1.1(b) n.*, resulting in a total offense level of 34 on the grouped counts. The combination of Reed's total offense level and Criminal History Category produced a recommended Guidelines sentencing range of 262-327 months for the grouped counts.

The remaining, ungrouped count--brandishing of a firearm during and in relation to a crime of violence--carried an 84-month mandatory minimum sentence to be served consecutively to the sentence imposed on the grouped counts. See 18 U.S.C. § 924(c)(1)(A)(ii), (c)(1)(D)(ii). Adding this mandatory minimum

---

[3] The PSR then increased this base offense level by two points, to 26, because of Reed's supposed leadership role in the offense. See U.S.S.G. § 3B1.1(c). Both parties agreed that this enhancement should not apply, and the district court did not apply it. In any event, the leadership enhancement ultimately had no bearing on the Guidelines sentencing range the PSR recommended.

to both ends of the grouped counts' recommended sentencing range of 262-327 months, see U.S.S.G. § 4B1.1(c)(2)(A), the PSR ultimately produced a total Guidelines sentencing range of 346-411 months.

Reed argued that neither the career offender Guidelines enhancement nor the ACCA applied to him. The district court disagreed on both points, approving the PSR's determinations in relevant part. Nonetheless, the district court accepted the government's recommendation that it apply a three-level downward departure from the range recommended in the PSR and instead use a range of 235-293 months as a "jumping off point" for Reed's sentence. From this baseline, the government recommended a downwardly variant or low-end sentence between 180 and 240 months. For his part, Reed recommended a sentence of 156 months. The district court agreed that a downward variance was appropriate and imposed a 192-month sentence,[4] specifically observing that "this

---

[4] The district court did not explain its justification for sentencing Reed below 264 months, despite the PSR's observation that the 84-month mandatory minimum applicable to the brandishing count under 18 U.S.C. § 924(c) "must be imposed consecutively" to the sentence on the grouped ACCA and robbery counts, which themselves carried a 180-month mandatory minimum sentence. See Abbott v. United States, 562 U.S. 8, 13 (2010) ("[A] defendant is subject to a mandatory, consecutive sentence for a . . . conviction [under 18 U.S.C. § 924(c)], and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."). Because the government raises no challenge to Reed's 192-month sentence, however, we do not consider whether that sentence should have been longer. See Greenlaw v. United States, 554 U.S. 237, 240 (2008).

[was] the right sentence for the crime that was committed" and that it "would [have] impose[d] the same sentence under the [sentencing factors laid out in 18 U.S.C. § 3553(a)]" even had it not found Reed to be a career offender under the Guidelines. Reed now appeals his sentence.[5]

## II.  Analysis

### A.  Standard of Review

Where a defendant has preserved a claim that his past convictions are insufficient to trigger the ACCA's mandatory minimum or the Guidelines' career offender enhancement, we review the claim de novo. See United States v. Hart, 674 F.3d 33, 40 (1st Cir. 2012); United States v. Santos, 363 F.3d 19, 22 (1st Cir. 2004). We uphold the district court's resolution of any subsidiary factual disputes, however, unless clearly erroneous. See Santos, 363 F.3d at 22. Finally, even where an error in sentencing occurs, we may nevertheless affirm the sentence if the government demonstrates that "'the district court would have imposed the same sentence' even without the error." United States v. Tavares, 705 F.3d 4, 25 (1st Cir. 2013) (quoting Williams v. United States, 503 U.S. 193, 203 (1992)); cf. also Molina-Martinez v. United States, 136 S. Ct. 1338, 1346 (2016) (error in

---

[5] Because Reed's sentence exceeds 180 months, both parties agree that the terms of the appeal waiver in Reed's plea agreement allow him to bring this appeal. See United States v. Serrano-Mercado, 784 F.3d 838, 841 n.1 (1st Cir. 2015).

calculating Guidelines sentencing range may be harmless on plain-error review when the record shows that "the district court thought the sentence it chose was appropriate irrespective of the Guidelines range").

**B.  Career Offender Enhancement**

The Guidelines provide that

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  Reed does not dispute that the first two factors apply in this case; he argues only that he lacks the requisite two prior felony convictions.

The basis for Reed's argument rests in the Guidelines' stipulation that, in order to constitute "two prior felony convictions," the sentences for the convictions in question must be "counted separately" under certain Guidelines provisions.  Id. § 4B1.2(c).  To determine whether the sentences are so counted, the Guidelines further provide:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless

> (A) the sentences resulted from offenses contained in the same charging instrument; or
> (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

Id. § 4A1.2(a)(2). Relying on condition (B), Reed argues that the three predicate felony convictions upon which the district court relied--two convictions in state court for drug trafficking offenses committed in July and September 2008 and one conviction in state court for a previous bank robbery committed in November 2008--should have been counted as only a single conviction because Reed pled guilty to all three offenses on the same date pursuant to a comprehensive plea agreement that consolidated all three offenses and that resulted in what Reed characterizes as a "de facto" single sentence imposed on the day of the plea.[6]

---

[6] Under the comprehensive plea agreement, signed on July 16, 2009, Reed agreed to a sentence of four years, with all but one year suspended, on one of the drug trafficking offenses, with sentencing on the remaining two offenses deferred until after Reed's completion of Adult Drug Treatment Court ("ADTC"). Reed was sentenced on the first offense on July 16, 2009, and on the remaining two offenses on November 18, 2010, upon his successful completion of ADTC. Reed argues, however, that because his plea agreement outlined "the sentencing parameters of all his predicate offenses," including the sentencing consequences of either completing or failing to complete ADTC, he was "de facto" sentenced for all three offenses the day he was sentenced in line with the plea agreement on July 16, 2009. The district court rejected this characterization of Reed's sentence, observing that it "couldn't conclude from the [submitted] documents . . . that [Reed was] sentenced on all three of [the predicate convictions] on the same date." Because we find that Reed's argument fails for other reasons, we express no view on whether the district court was correct to reject Reed's argument on this point.

This entire argument concerning condition (B) is beside the point. Condition (B) plainly applies only "[i]f there is no intervening arrest" between predicate offenses. Id. In Reed's case, it is undisputed that there was such an arrest. Reed committed his first predicate drug-trafficking offense on July 3, 2008. He was arrested for this offense on September 15, 2008, and it was only after this arrest that he committed his second predicate drug-trafficking offense, on September 24, 2008. Below, Reed initially objected to the September 15, 2008, arrest date, arguing that he had not been arrested for the first drug offense until October 29, 2008, over a month after he had committed the second drug offense. When questioned by the district court at a presentencing conference, however, defense counsel affirmatively stated, "I think I withdraw my objection" to the September 15, 2008, arrest date. And even now on appeal, Reed's brief accepts September 15, 2008, as the date of arrest for the first predicate felony.

The district court therefore committed no error in finding that Reed had at least "two prior felony convictions of either a crime of violence or a controlled substance offense,"[7]

---

[7] Reed does not dispute that his drug-trafficking convictions were for "controlled substance offense[s]." U.S.S.G. § 4B1.1(a). And because these two convictions suffice for imposition of the Guidelines' career offender enhancement, we have no occasion to determine whether Reed's conviction under Maine's robbery statute could also properly serve as a predicate for the enhancement.

id. § 4B1.1(a), and that, as a result, he was subject to the career offender enhancement under the Guidelines.

## C. Mandatory Minimum Under the ACCA

Reed separately challenges the district court's determination that the ACCA's 15-year mandatory minimum applied in his case.[8] Under the ACCA, a felon in possession of a firearm is subject to the mandatory minimum if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Here, too, it is undisputed that Reed has previously been convicted in Maine state court for (1) a drug trafficking offense committed in July 2008; (2) a drug trafficking offense committed in September 2008; and (3) a previous bank robbery committed in November 2008.

Reed points out, however, as he did in the district court, that his three predicate convictions, relating to offenses that occurred within a single five-month span, were consolidated as a result of a comprehensive July 2009 plea agreement in state court. Therefore, he reasons, he does not have three predicate convictions for the purposes of the ACCA, but has instead only one. But each conviction was registered in a separate judgment,

---

[8] The government has not argued that Reed's guilty plea to an ACCA count constitutes an affirmative waiver of any challenge to the applicability of the mandatory minimum, so we do not consider the effect, if any, of Reed's plea agreement.

and this circuit has already rejected the idea that the consolidation of convictions for the purposes of sentencing suffices to merge those convictions into a single ACCA predicate. See United States v. Riddle, 47 F.3d 460, 461-62 (1st Cir. 1995) (per curiam). Reed makes no persuasive argument that the temporal proximity of his offenses establishes that they were not "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Indeed, Reed as much as concedes that this string of offenses cannot be characterized as a single spree. Cf. United States v. Gillies, 851 F.2d 492, 497 (1st Cir. 1988) (convictions for robberies of two different drug stores were treated separately, even where the robberies were committed on consecutive days and garnered concurrent sentences). And although Reed attempts to argue that his single cluster of prior felony offenses does not represent the sort of "career" of criminal conduct Congress sought to address through the ACCA, this broadly purposivist argument, too, has previously been rejected in this circuit. See Riddle, 47 F.3d at 462. The district court, in other words, did not err in rejecting the ACCA arguments that Reed advanced below.

On appeal, Reed lodges an alternative attack against the application of the ACCA. Despite making no such argument below, Reed now suggests that his predicate convictions were not for "violent felon[ies] or . . . serious drug offense[s]." 18 U.S.C. § 924(e)(1). Because he raises this argument for the first time

on appeal, we review it under the plain-error standard. See United States v. Madsen, 809 F.3d 712, 717 (1st Cir. 2016). Under this standard, Reed must demonstrate an obvious error that affected his substantial rights and that "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Reed concedes that his two prior drug trafficking convictions, although pertaining to relatively small drug quantities, carried maximum sentences of at least ten years and so we conclude that they were "serious drug offense[s]" as that term is defined by the ACCA. See 18 U.S.C. § 924(e)(2)(A)(ii). Reed is left, then, with the argument that his prior robbery conviction was not a "violent felony" under the ACCA. Id. § 924(e)(1).

The ACCA defines "violent felony" in relevant part as:

[A]ny crime punishable by imprisonment for a term exceeding one year, . . . that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Id. § 924(e)(2)(B). In Johnson v. United States, 135 S. Ct. 2551 (2015), the Supreme Court invalidated as unconstitutionally vague

- 12 -

the clause in subsection (ii) permitting a crime that "involves conduct that presents a serious potential risk of physical injury to another" to serve as an ACCA predicate, see id. at 2557. Were the district court to have relied on this clause in holding that Reed's robbery conviction was a conviction for a violent felony, it would have committed obvious error. See Henderson v. United States, 133 S. Ct. 1121, 1130-31 (2013) ("[W]hether a legal question was settled or unsettled at the time of trial, 'it is enough that an error be "plain" at the time of appellate consideration' . . . ." (quoting Johnson v. United States, 520 U.S. 461, 468 (1997))).

However, the district court never suggested that it was relying on the invalidated portion of subsection (ii). Nor does Reed claim that it did. So Reed's argument hinges on demonstrating that his robbery offense fails to qualify as a violent felony under subsection (i), the so-called "force clause," which encompasses crimes that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Reed, though, offers no argument at all, even on appeal, that Maine's robbery offense does not so qualify. Indeed, even after the government's brief proffered only a possibility that Maine's robbery statute describes an offense that qualifies as a violent felony under the force clause, Reed offered no rebuttal. He has therefore not carried his burden of

- 13 -

showing that an obvious error has occurred. See United States v. Jimenez, 512 F.3d 1, 3 (1st Cir. 2007) (burden of showing plain error rests with appellant).

We do observe that even if Reed had successfully shown clear error, his request for a remand likely would have failed, as he has also barely ventured to make any showing that any error in applying the ACCA would likely have affected his substantial rights. After all, we have already determined that the district court correctly applied the entirely separate career offender enhancement, which resulted in a Guidelines sentencing range of 346-411 months--well above ACCA's 180-month mandatory minimum. Despite this "stratospher[ic]" range, the district court applied a substantial downward departure and, on top of that, a further downward variance, ultimately arriving at a 192-month sentence. Reed makes no argument that the district court would have varied downward still further had the ACCA not applied.[9]

He would have been hard-pressed to support such an argument. The district court had before it Reed's request for a 13-year sentence and the government's statement that it was "comfortable with" a 15-year sentence. Nevertheless, the district court found these suggested sentences inadequate in the face of

---

[9] Indeed, were we to rule in Reed's favor, he would have no guarantee that the district court on remand would exercise its sentencing discretion so favorably toward him.

- 14 -

Reed's "very serious offense," which "opened the door to the risk to a lot of people," and the fact that Reed's "behavior with the gun set[] [him] apart" from his codefendants. Accordingly, the district court found that a 16-year sentence was "the right sentence for the crime that was committed, for the person who [Reed is] and what [he] bring[s] to the Court." Although we may in some cases find that the improper application of a mandatory minimum is presumptively prejudicial even in the absence of any direct indication that the district court relied on that minimum in fashioning a sentence, this is not such a case. The district court's proper calculation of a Guidelines range well above the statutory minimum, along with its considered application of the statutory sentencing factors and its determination that Reed's sentence was "correct" in light of those factors, satisfy us that even if it were error to apply the ACCA's mandatory minimum, that error would likely have had no impact on Reed's ultimate sentence. Cf. United States v. Teague, 469 F.3d 205, 209-10 (1st Cir. 2006) (erroneous application of career offender enhancement was harmless where district court sentenced defendant within the range that would have resulted had enhancement not been applied and where district court "carefully explained the reasons for the sentence," reflecting "appropriate statutory considerations," id. at 209).

## III.  Conclusion

Finding no error in the district court's application of the Guidelines' career offender enhancement, and finding no plain error resulting from the district court's application of the ACCA's mandatory minimum, we <u>affirm</u> Reed's sentence.